EMILIE COLÓN VDA. DE RIVERA, por sí y en representación de sus hijos menores MINERVA, EDWIN AMÉRICO, RAMFIS y JACQUELINE RIVERA COLÓN; TULIO GERMÁN RIVERA COLÓN, demandantes y recurrentes, *v.* CARLOS ROMERO BARCELÓ, CHARLES GUGGENHEIM y/o CORP. JOHN DOE, INC. y RICHARD ROE MARY JOE, actuando como COMITÉ CARLOS 80, demandados y recurridos.

*Número:* R-80-591 *Resuelto:* 6 de abril de 1982

574

*José A. Silva Cofresí* y *Pedro J. Salicrup*, abogados de los demandantes y recurrentes; *Alex González*, abogado de los demandados y recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La viuda e hijos del Sr. Tulio Germán Rivera Lugo —asesinado el 24 de septiembre de 1977 durante un asalto perpetrado en el Frigorífico "La Palma", Santurce— formularon el 25 de junio de 1980 demanda en daños e *injunction* contra el Gobernador Hon. Carlos Romero Barceló, el Sr. Charles Guggenheim y el "Comité Carlos 80", alegando en síntesis que éstos difundieron un anuncio de televisión donde, sin obtener previo consentimiento utilizaron "una grotesca foto" del cadáver del señor Rivera Lugo. Adujeron que fueron visitados por la Sra. Mildred Mercado, identificada como empleada de La Fortaleza, quien les pidió que participaran en el mencionado anuncio y ellos se negaron. La demanda consigna, además, que no obstante tal negativa, se comenzó a transmitir el anuncio por televisión, lo cual continuó aun cuando uno de los familiares del occiso, a nombre de ellos, infructuosamente solicitó a funcionarios de La Fortaleza que suspendieran esa difusión. Finalmente, la reclamación expone que la actuación de los demandados constituyó una invasión de su intimidad, causándoles sufrimientos y angustias mentales y daños estimados en la cantidad de $500,000.

A solicitud de los demandados el tribunal desestimó la acción. Acordamos revisar.[1]

### I

El examen de las alegaciones de la demanda refleja que la acción está basada en el derecho a la intimidad de los demandantes. Amerita, pues, un análisis sucinto del rango

---

[1] A los fines de evaluar los méritos de ese dictamen, conforme la Regla 10.2 de Procedimiento Civil, debemos aceptar como ciertas las alegaciones de la demanda.

constitucional de ese derecho a la luz del enfoque y evolución doctrinarios en nuestra jurisdicción.

Nuestra Ley Fundamental dispone en lo pertinente:

La dignidad del ser humano es inviolable.

. . . . . . . .

Toda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación *y a su vida privada o familiar.* (Énfasis suplido.) Art. II, Secs. 1 y 8.

 El carácter y primacía del derecho y protección a lo privado nos ha movido a reconocer que opera *ex proprio vigore* y puede hacerse valer entre personas privadas. *Figueroa Ferrer* v. *E.L.A.*, 107 D.P.R. 250 (1978); *E.L.A.* v. *Hermandad de Empleados*, 104 D.P.R. 436 (1975); *Alberio Quiñones* v. *E.L.A.*, 90 D.P.R. 812 (1964); *González* v. *Ramírez Cuerda*, 88 D.P.R. 125 (1963). Así, en *E.L.A.* v. *Hermandad de Empleados*, supra, señalamos que el derecho a la intimidad en nuestro país tiene un historial distinto y más amplio que el plasmado en la jurisdicción federal y exime del requisito de acción estatal (*state action*) para hacerlo valer entre personas particulares.

 Este derecho constitucional impone a toda persona el deber de no inmiscuirse en la vida privada o familiar de los demás seres humanos. A tal efecto, una indebida intromisión en el hogar de una familia es una infracción remediable mediante el recurso de *injunction. E.L.A.* v. *Hermandad de Empleados*, supra; *Sucn. de Victoria* v. *Iglesia Pentecostal*, 102 D.P.R. 20 (1974). El recurso que nos ocupa permite decidir si puede también hacerse valer este derecho mediante una demanda en daños, o sea, si son indemnizables los perjuicios causados por una violación del deber de no intervenir con

la privacidad de los demás bajo el Art. 1802(²) del Código Civil. La ilustrada sala de instancia reconoció en la afirmativa la cuestión, pero estimó que no procedía en el caso de autos resarcimiento alguno por los fundamentos de que se trataba de un anuncio de "interés público" para difundir la ocurrencia de un célebre suceso criminal ya acaecido, de carácter noticioso y público, con el fin de crear conciencia en el pueblo sobre la alta criminalidad en el país y estimular al electorado para que acudiera a votar afirmativamente en la consulta que se celebraría sobre la enmienda constitucional sobre el derecho a la fianza; circunstancia que a su juicio sobrepasa el derecho a la privacidad de los demandantes.

En su decreto el tribunal sentenciador concluyó que en la jurisdicción norteamericana, aunque con renuencia, se admite la validez de la acción en daños por violación al derecho a la intimidad —Prosser, *Handbook of the Law of Torts*, 4ta ed., 1972, pág. 802 y ss.; *Ann., Invasion of Privacy by Publications Dealing with One Other Than Plaintiff*, 18 A.L.R.3d 873 *et seq.* (1968); *Ann., Waiver of Loss of Right of Privacy*, 57 A.L.R.3d 16 *et seq.* (1974)— pero por la situación apuntada desestimó la acción.

## II

■ Concluimos que incurrió en error. Nos explicamos. El Art. 1802 citado, como fórmula abarcadora que rige la legalidad en el campo de lo civil de toda acción u omisión de la conducta humana, acepta conceptualmente el derecho a la intimidad como parte integrante de los derechos de la personalidad. A tal efecto Castán nos dice que su defensa se medirá por los principios jurídicos relativos a la culpa:

---

(²) Reza:

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización." 31 L.P.R.A. sec. 5141.

No aparece, *prima facie*, en el Código civil español rastro alguno de los derechos esenciales de la persona. Pero, en realidad, la vida, la libertad, el nombre, el honor y demás bienes personales, aun sin tener una clara conceptuación de derechos subjetivos, tienen, sin embargo, en nuestro Derecho, aparte de la correspondiente protección de orden penal, *la tutela civil resultante de la acción de indemnización que con carácter general establece el art. 1.902 del Código civil, contra el que, por acción u omisión, causa daño a otro interviniendo culpa o negligencia.* (Énfasis suplido.) Castán, *Derecho Civil Español, Común y Foral,* 1971, T. I, Vol. 2, pág. 341.

Santos Briz explica el derecho con referencia a la propia imagen:

En virtud de este derecho toda persona puede oponerse a que se reproduzca su efigie o se obtengan pruebas fotográficas de la misma, por personas a quienes no haya concedido autorización expresa o tácita. Se extiende la prohibición a reproducir la imagen de otro en el teatro, el cine o la televisión; y comprende no solo la publicación de la imagen sino también la confección, dibujo o pintura de la misma sin autorización cuando se oponga a legítimos intereses del afectado, en especial si según el objeto de la fotografía o el modo y forma de su obtención resulta escandalosa o tuvo lugar contra la voluntad conocida del perjudicado. La autorización para hacer una fotografía no incluye la autorización para publicarla, ya que la publicación afecta a la personalidad del interesado más intensamente que el simple hecho de retratarlo. La autorización para ser publicada puede incluir alguna limitación cuya amplitud se determinará según la interpretación del caso concreto.

Cierta doctrina e incluso legislación extranjera considera admisible, sin perjuicio de otras causas de justificación, la publicación o la toma de fotografías en la esfera llamada de historia contemporánea ("aus dem Bereich der Zeitgeschichte") no referida a la vida privada, o cuando reproduzcan reuniones, manifestaciones u otros actos públicos semejantes o sucesos o localidades públicos en los que la persona fotografiada sea una figura accesoria. Además, se admite la publicación de fotografías hechas sin petición del interesado cuando así lo justifique un serio interés artístico. Pero aun en estos casos no debe tolerarse hacer una fotografía o

publicarla cuando a ello se oponga un interés legítimo del fotografiado. *Igualmente ha de considerarse inadmisible la publicación de una fotografía cuando la toma de la misma haya violado intereses dignos de una protección predominante, aunque la publicación misma no se oponga a dichos intereses.*

No hay en nuestro Derecho, como unánimemente reconocen los autores, normas jurídicas que directamente protejan la esfera personal consistente en prohibir la reproducción de la propia imagen. No queda otro medio para esta protección que acudir al Código penal cuando la reproducción de la imagen constituya un delito de injurias o de calumnia, *o considerar, cuando se trate de infracción civil derivada de culpa extracontractual, que su protección se establece en el amplísimo precepto del artículo 1.902 del Código civil.* Queda, pues, hasta ahora conferida la apreciación de los casos concretos al prudente arbitrio de los Tribunales que se apoyarán principalmente en las circunstancias que concurran, tanto para incriminar los hechos como delito o falta, como para pronunciarse acerca de la sanción civil correspondiente. (Énfasis suplido.) Santos Briz, *Derecho de Daños*, Madrid, 1963, págs. 178–179. [3]

Nuestra jurisprudencia ha reconocido que el concepto de culpa del Art. 1802 es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o daño. *Gierbolini* v. *Employers Fire Ins. Co.*, 104 D.P.R. 853 (1976); *Reyes* v. *Sucn. Sánchez Soto*, 98 D.P.R 305 (1970). Acordes con esta posición concluimos que nuestra evolución doctrinaria en materia de daños enmarca la causa de acción en el caso de autos. *Cf. Muriel* v. *Suazo*, 72 D.P.R. 370 (1951).

Por último, antes de examinar si procede o no la moción de desestimación, hay que distinguir la presente demanda de una por libelo. Algunos rasgos que la diferen-

---

[3] Esta doctrina se extiende a otros países de tradición civilista tales como Italia (Art. 10 del Código Civil); Argentina (Art. 31 de la Ley Núm. 11.723 sobre propiedad intelectual); y Francia, que también la reconoce: Carbonier, *Derecho Civil*, (trad. Zorrilla Ruiz), 1960, T. I, Vol. I, págs. 313–314.

cian de ésta son que: (1) en la acción de daños la verdad no es defensa; (2) ni se trata de una publicación en ejercicio de la libertad de prensa (pues es una persona o entidad particular y no un medio noticioso quien promueve la publicación); ni (3) se trata de una publicación libelosa o difamatoria que afecte la reputación, sino de una que supuestamente atenta contra el derecho de los demandantes a lo privado.

## III

En la moción de desestimación los demandados levantaron dos defensas, a base de las cuales el tribunal de instancia declaró sin lugar la acción. Examinémoslas por separado.

### 1. *Interés público*

■ El interés público es una defensa oponible a las acciones como la presente, según la referida doctrina civilista. Castán, *supra*. A estos efectos Santos Briz señala:

> Toda lesión de la personalidad es antijurídica salvo que concurra una causa de justificación (legítima defensa, estado de necesidad, acción directa o autoayuda) o el consentimiento del ofendido que no sea contrario a las buenas costumbres. *La antijuridicidad queda también excluida cuando el acto se considera socialmente adecuado, es decir, conforme a derecho en atención a la ordenación ético social de la vida en común.* El reconocimiento de la adecuación social como causa de justificación se opone también al peligro de una extensión excesiva de la protección de la personalidad. *Ciertas lesiones de la personalidad son inevitables y han de ser toleradas cuando así lo imponga un criterio razonable de la vida social.* Finalmente la antijuridicidad del ataque puede ser excluida para salvaguardar intereses que merezcan una especial protección. Los intereses contrapuestos deben ser recíprocamente compulsados, en todos los casos de antagonismo, según principios racionales. La infracción estará justificada únicamente cuando, atendiendo a consideraciones objetivas, el interés del agente público o privado sea de

mayor valor o rango. *Ha de atenderse al interés más alto cuando la infracción aparece objetivamente como necesaria e inevitable y según las circunstancias, contenido y forma aparece como el medio más indicado y adecuado para obtener, por medio del ataque llevado a cabo, una finalidad lícita y jurídica.* Santos Briz, *op. cit.,* págs. 165-166. (Énfasis suplido.)

El juez sentenciador señaló que el interés público aquí envuelto era: ". . . hacer consciente aún más a nuestra población del problema de la alta criminalidad en Puerto Rico, en vías de estimularlos para que en ánimo de combatir ese mal, acudiera a votar afirmativamente en la consulta que se celebraría sobre la enmienda constitucional para permitir a la legislatura reformar las leyes sobre las fianzas a acusados criminales." Determinó que el anuncio tenía "carácter de interés público" y que por tanto "su contenido se considera como uno privilegiado y no existe causa de acción en reclamo de daños por una alegada violación al derecho a la privacidad".

█ Aun aceptando como válido el interés público aducido, el mismo no justifica que se desestime este caso. Nos explicamos. Como bien señala Santos Briz, *ante,* esta defensa prevalece cuando la intromisión a la intimidad es *necesaria* e *inevitable* y constituye el medio más adecuado para obtener un fin lícito. No es ésta la situación ante nos. Existían otros medios de difundir el mensaje contenido en el anuncio. No tenía que presentarse la foto grotesca del señor Rivera para cumplir con tal propósito. Hasta podía ser otra clase de anuncio y causar el mismo efecto en el público. No siendo este anuncio la única ni la más adecuada forma de cumplir con ese interés público la violación de la intimidad no estuvo válidamente justificada y es improcedente esta defensa.

2. *Libertad de expresión*

La segunda defensa levantada por los demandados fue que el anuncio se difundió en ejercicio del derecho

constitucional a la libertad de expresión consagrado en nuestra Constitución en la Sec. 4 del Art. II. Hemos reconocido que el mismo se puede aducir en pleitos entre particulares. *E.L.A.* v. *Hermandad de Empleados*, supra; *Sucn. de Victoria* v. *Iglesia Pentecostal*, supra. Se deben sopesar los intereses envueltos —la intimidad y la libre expresión en el caso de autos— y determinar, a base de las circunstancias envueltas, cuál prevalece. *E.L.A.* v. *Hermandad de Empleados*, supra; *Sucn. de Victoria* v. *Iglesia Pentecostal*, supra.

Lo primero que notamos es que *García Cruz* v. *El Mundo, Inc.*, 108 D.P.R. 174 (1978), no es aplicable a los hechos de este caso toda vez que (1) no se trata de una publicación hecha en ejercicio de la libertad de prensa y sí para promover una propuesta sumida en una controversia política; (2) el asesinato de una persona no convierte a ésta, ni a sus familiares, en figuras públicas dentro del alcance de dicha decisión; y (3) no se trata aquí de una publicación libelosa y sí de una publicación que pudo afectar el derecho de los demandantes a que no se lesionara su intimidad ni se abusara de sus sentimientos.

■ Lo *segundo*, en la situación ante nos, el derecho a lo privado es de superior jerarquía a la libertad de expresión. Al solicitar de los demandantes el consentimiento para el anuncio, ellos se negaron. Cuando comenzó su difusión le pidieron a los demandados que lo descontinuaran y éstos se negaron. Según expresáramos anteriormente, los demandados podían llevar a cabo su mensaje de otra forma o utilizando otros medios. La inclusión de la fotografía objetada no era esencial para comunicarlo. Ante estas circunstancias no se justificó la invasión de la intimidad.

Por los fundamentos expuestos, *se dictará sentencia que revoque la del Tribunal Superior, Sala de San Juan, y devuelva el caso a dicho foro para la continuación de los trámites compatibles con lo resuelto.*

El Juez Asociado Señor Dávila se inhibió. El Juez Asociado Señor Díaz Cruz no intervino.