Sánchez Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
La controversia que esencialmente plantea este recurso es si procede la expedición de un injunction *869 permanente para impedirle al conocido titiritero Kobbo Santarrosa y su adlátere Leo Fernández que difundan información en su programa SuperXclusivo que se transmite por Televicentro de Puerto Rico, Canal 4, sobre la filiación de un hijo (menor de edad) del conocido animador de televisión Héctor Marcano. El Tribunal de Primera Instancia, Sala Superior de Bayamón, emitió el injunction permanente al otorgarle preeminencia al derecho de intimidad de la familia Marcano frente al derecho de libertad de prensa y expresión de Televicentro, Santarrosa y Fernández. Por considerar que en las circunstancias del presente caso, el derecho de libertad de prensa y expresión goza de mayor protección que el derecho a la intimidad invocado que el remedio de injunction constituye realmente una censura previa vedada por la Constitución de Puerto Rico y la de Estados Unidos, se revoca la sentencia apelada.
El 12 de julio de 2000, a las seis de la tarde, se transmitió el programa de televisión SuperXclusivo, a través del Canal 4 (Televicentro de P.R., Inc.). En dicho programa, el señor Leo Fernández realizó un reportaje en el que entrevistó a la señora Norma Ivette Marcano Cosme y a la señora Norma Iris Cosme, quienes hicieron unas alegaciones sobre la filiación del menor J.P.M.H. Específicamente, éstas alegaron que dicho menor realmente era hijo biológico del señor Ignacio Marcano Cosme alias "Nachito", quien era hermano e hijo, respectivamente, de éstas y expusieron sus razones para así creerlo. En el programa no se presentaron fotografías ni vídeos del menor. Al finalizar el programa, se anticipó que al día siguiente se pasarían en el programa las declaraciones que habían hecho Nachito y el padre de éste, así como también se mostrarían fotografías y vídeos.
Al día siguiente del programa, el señor Héctor Marcano y la señora Wanda Hernández, por ellos mismos y en representación de su hijo menor de edad J.P.M.H., presentaron un recurso de entredicho provisional, injunction preliminar e injunction permanente de los señores José Ramos, Antulio ("Kobbo") Santarrosa y Leo Fernández, en su capacidad personal y como agentes de Televicentro de P.R., Inc. para prohibir la divulgación y expresión pública de cualquier información relacionada con los demandantes Marcano-Hemández en asuntos que se refirieran a sus hijos. Los demandantes Marcano-Hemández basason su petición en el derecho a la intimidad. Por su parte, ese mismo día, la Leda. Margarita Millán, Vicepresidente de Programación de Televicentro, emitió declaraciones públicas en las que indicó que no se iba a repetir la situación que se había dado en el referido programa. Asimismo, los codemandados Santarrosa y Fernández indicaron en el programa SuperXclusivo de ese día que no mencionaría más el tema en cuestión.
El Tribunal de Primera Instancia denegó el entredicho provisional y señaló una vista para dilucidar la solicitud de injunction preliminar. Las partes acordaron una estipulación en la que los demandados Ramos, Santarrosa, Fernández y Televicentro acordaron someterse a la jurisdicción del tribunal. De igual forma, las partes solicitaron un término para presentar memorandos de derecho para sostener sus respectivas posiciones. Como parte de la estipulación, el tribunal apelado estableció que durante el período de tiempo que dicho foro concediera y hasta tanto se resolvieran las controversias jurídicas que se le presentaran en dichos memorandos, regiría un acuerdo entre las partes que establecía que no se mencionaría más al menor, ni las circunstancias en que se le relacionaba, lo que incluia a los padres demandantes en la medida en que se les relacionara con lo mismo. Dicha prohibición incluia los medios de radio, televisión, prensa escrita, Internet y cualquier otro medio de difusión y, además, vinculaba a cada uno de los demandados, así como a sus agentes, representantes, empleados, mandatarios, abogados y testaferros.
El acuerdo proveía, además, que durante ese tiempo los demandados de Televicentro no asediarían, acosarían o acecharían a la familia de los Marcano-Hemández en la búsqueda de evidencia fílmica, fotográfica o de cualquier otro tipo relacionada con las circunstancias que motivaban el recurso de injunction. Finalmente, la estipulación apercibía a ambas partes de la posibilidad del desacato criminal como consecuencia de infringir el acuerdo establecido. Basado en dicha estipulación, el tribunal apelado emitió la orden de injunction preliminar.
Así las cosas, el 23 de julio de 2000, el demandante Héctor Marcano fue entrevistado por la señora Carmen *870 Jovet en su programa "Ahora Podemos Hablar". En dicho programa, el demandante Héctor Marcano habló sobre el caso y se mostraron fotografías de éste y de su familia, incluyendo fotografías de todos sus hijos, incluyendo al menor J.P.M.H.
Posteriormente, las partes sometieron sus respectivos memorandos de derecho, luego de lo cual el Tribunal de Primera Instancia dictó sentencia en la que determinó que en el caso de autos la balanza tenía que inclinarse a favor del derecho a la intimidad del menor y de su familia y, por consiguiente, procedía expedir el injunction permanente. Dicho foro determinó, sin embargo, que la petición se había tomado académica debido a que todos los demandados habían asumido públicamente y en el tribunal, el compromiso de no volver a transmitir, ventilar o dilucidar en el canal de Televicentro, ni en el programa SuperXclusivo ninguna otra cuestión concerniente a la filiación del menor, ni de su familia, en la medida en que se relacionara con dicho menor.
Los demandantes Marcano-Hemández acudieron nuevamente al Tribunal de Primera Instancia y alegaron que los demandados habían incumplido la sentencia, debido a que éstos habían vuelto a televisar en el programa SuperXclusivo las entrevistas que había originado la petición de injunction. El tribunal celebró entonces una vista y enmendó nunc pro tune la sentencia para añadirle el siguiente texto: "No obstante, deseamos aclarar que el Tribunal acoge la estipulación judicial, así como la extrajudicial, y ordena su fiel cumplimiento apercibiendo que de incumplir lo acordado se castigará con desacato criminal". Sentencia enmendada nunc pro tunc, a las págs. 9-10.
En la sentencia emitida por el tribunal apelado, dicho foro ponderó el derecho a la intimidad de los Marcano-Hemández vis a vis el derecho la libertad de expresión de los demandados Televicentro, Ramos, Santarrosa y Femánde’; y resolvió que el derecho a la intimidad de los primeros debía prevalecer sobre la libertad de expresión de los últimos. Al así resolver, el foro de primera instancia destacó que en el caso de autos se trataba de un menor y todo lo concerniente a los menores tenía rango de política pública. 
El tribunal apelado también evaluó la contención de Televicentro.y demás codemandados -de que no se les podía imponer una censura previa-, y resolvió que no estaba ante un caso de censura previa, debido a que no se pretendía evitar la difusión o publicación de información de interés público, ni la divulgación de ideas, sino que lo que se trataba de lograr era prohibir la divulgación en cuanto a la filiación de un menor. Dicho foro indicó que las manifestaciones lo que hacían era denigrar la intimidad del menor y de su familia y añadió que la libertad de expresión no protegía tales intereses. A esos efectos, señaló que el injunction solicitado no iba dirigido a restringir ninguno de los derechos de libertad de expresión, sino que iba dirigido a impedir que se continuara denigrando la integridad familiar del menor y su derecho a la intimidad.
El tribunal a quo también resolvió que en este caso se cumplía con los requisitos del injunction, al resolver que no existía otro remedio legal que las partes pudieran presentar para detener las manifestaciones en tomo a la filiación del menor e impedir que éste se siguiera afectando por dichas manifestaciones.
Inconformes con la sentencia dictada, los codemandados Televicentro y José Ramos apelaron ante este Tribunal y señalan que el Tribunal de Primera Instancia cometió error: (1) al resolver que existía una estipulación judicial y otra extrajudicial entre las partes, para las cuales ordenaba su cumplimiento; (2) al resolver que no aplicaba la prohibición de censura previa al caso; y (3) al no darle curso a una moción de los apelantes Televicentro y Ramos que solicitaban una orden de apercibimiento para los demandantes Marcano-Hemández, de éstos incumplir con el acuerdo provisional.
El primer apuntamiento de los apelantes Televicentro y Ramos es que el tribunal a quo erró al enmendar la sentencia para señalar que acogía "la estipulación judicial, así como la extrajudicial" y ordenaba su fiel cumplimiento apercibiendo que de incumplir lo acordado se castigaría con desacato criminal. La parte apelante indica que no existe estipulación extrajudicial alguna y que la estipulación judicial a la que llegaron las partes era provisional hasta que se resolviera el caso, por lo que el tribunal apelado erró al enmendar su sentencia para *871 incluir dicho texto. Los apelantes Televicentro y Ramos tienen razón, Veamos.
Del examen de la resolución emitida por el tribunal apelado el 19 de julio de 2000, surge que el acuerdo al que habían llegado las partes regiría "durante el período de tiempo que el Tribunal conceda y hasta tanto resuelva las controversias jurídicas que se le presenten en dichos memorandos". Resolución, a la pág. 2 (énfasis nuestro). El tribunal apelado le impartió su aprobación a los términos de la estipulación de las partes y dictó una orden de injunction preliminar, de conformidad con dicha estipulación. Como señalamos anteriormente, dicha estipulación establecía que no se mencionaría más al menor, ni sus circunstancias, establecía una prohibición que incluia los diferentes medios de comunicación y vinculaba a los demandados y sus agentes, mandatarios, representantes, abogados y testaferros.
En el caso de autos, el acuerdo entre las partes surgió en la vista para determinar la expedición del injunction preliminar y no el injunction permanente. Por tal razón, dicho acuerdo duraría hasta tanto el tribunal apelado resolviera si procedía o no el injunction permanente solicitado por los demandantes Marcano-Hemández, puesto que dicho acuerdo no ponía fin a las controversias entre las partes, dado que el mismo era provisional hasta que, precisamente, el tribunal resolviera dichas controversias.
La estipulación acordada por las partes, por sus propios términos y naturaleza, constituía un acuerdo provisional que tendría vigencia y sería vinculante hasta que el foro apelado resolviera la controversia del caso, que consistía en determinar si procedía expedir un injunction permanente para prohibir la transmisión de cierta información relacionada con los demandantes Marcano-Hemández.
Otra razón que avala la posición de la parte apelante Televicentro y Ramos -de que la estipulación de las partes era un acuerdo provisional-, se deriva de lo expuesto en el memorando de derecho que dicha parte le sometió al tribunal apelado para que éste emitiera su decisión final sobre la expedición del injunction permanente. En el referido memorando, la Televicentro y Ramos argumentaron que la expedición del injunction permanente violaba su derecho constitucional a la libertad de expresión, puesto que constituía una censura previa a la información que dicha estación de televisión podía transmitir. En ese sentido, si la estipulación entre las partes hubiese tenido carácter de finalidad, no hubiese sido necesaria la continuación del pleito en el tribunal, puesto que, a tenor con el acuerdo, la parte apelante motu proprio se hubiese abstenido de difundir información relacionada con los demandantes Marcano-Hemández. De igual forma, si el acuerdo hubiese sido final, el tribunal a quo no hubiese tenido que entrar a dilucidar la controversia sobre qué derecho constitucional debía prevalecer entre el derecho a la intimidad del menor y su familia y el derecho a la libertad de expresión de la televisora.
También es correcta la aseveración de la parte apelante en cuanto a que el tribunal a quo ordenó el cumplimiento de una estipulación extrajudicial inexistente. No surge de los autos originales que hubiese habido otra estipulación que no fuese la estipulación judicial provisional a que llegaron las partes en la vista del injunction preliminar. Tomamos conocimiento judicial de lo publicado en la página 53 del periódico Primera Hora del viernes 14 de julio de 2000, respecto a que la Vicepresidente de Programación de Televicentro, señora Margarita Millán, hizo expresiones a los efectos de que "esta situación no se repetirá"; de que "[ejsas cosas son de familia y no es para dilucidarse en televisión"-, de que Kobbo Santarrosa "no va a sacar más sobre eso"; y de que "esperamos que una situación como [éjsta no vuelva a ocurrir; no debería ocurrir". Sin embargo, si bien dicha representante de Televicentro hizo esas manifestaciones, las mismas no constituyeron una estipulación extrajudicial entre las partes, puesto que dichas manifestaciones las hizo una parte por su cuenta, sin que las mismas formaran parte de un acuerdo vinculante con los demandantes Marcano-Hemández, por lo que dicha parte podía luego cambiar de opinión y decidir transmitir información relacionada con el asunto en cuestión.
Cabe destacar, además, que las expresiones de la representante de Televicentro fueron hechas al día siguiente de transmitirse el programa de SuperXclusivo; que fueron hechas fuera del tribunal; y que fueron *872 hechas el mismo día en que se presentó la petición de injunction, pero mucho antes de que el tribunal a quo celebrara la vista de injunction preliminar y de que las partes hicieran la estipulación judicial.
En vista de lo anterior, resolvemos que el tribunal apelado sujetó a las partes a un acuerdo inexistente bajo pena de desacato y denegó el injunction permanente, basándose en dicho acuerdo inexistente y en un acuerdo judicial que habían estipulado las partes de forma provisional, hasta tanto el foro de primera instancia resolviera las controversias discutidas en los memorandos de derecho presentados por las partes. Dada la inexistencia del acuerdo extrajudicial y la naturaleza provisional del acuerdo judicial, el Tribunal de Primera Instancia cometió error al indicar en su sentencia enmendada que acogía la estipulación judicial y extrajudicial a la que llegaron las partes y ordenaba su cumplimiento bajo pena de desacato, cuando no existían tales estipulaciones.
El segundo apuntamiento de Televicentro y Ramos es que el Tribunal de Primera Instancia erró al resolver que en el caso de autos la información difundida no era de interés público, ni divulgaba ideas, por lo que no le cobijaba la garantía constitucional de libertad de expresión, ni aplicába la prohibición de censura previa. A esos efectos, Televicentro y Ramos señalan que nuestro más alto foro se ha negado, a confirmar la utilización de órdenes de interdicto para prohibir la publicación de cierta información. De igual forma, indican que la situación que se da en el caso de autos, no cae dentro de las situaciones de excepción que la jurisprudencia ha reconocido al derecho de libertad de expresión. Finalmente, aducen que el tribunal a quo no podía expedir el injunction solicitado, debido a que no se cumplía con los requisitos para que se emitiera ese tipo de recurso extraordinario. Televicentro y Ramos tienen razón.
La Constitución de Puerto Rico dispone en la See. 4 de su Art. II, 1 L.P.R.A. Art. II, Sec. 4, que ”[n]o se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios". De igual forma, la Primera Enmienda de la Constitución de Estados Unidos dispone, en lo pertinente, que "[e]l Congreso no aprobará ninguna ley con respecto al establecimiento de religión alguna, o que prohíba el libre ejercicio de la misma o que coarte la libertad de palabra o de prensa; o el derecho del pueblo a reunirse pacíficamente y a solicitar del Gobierno la reparación de agravios". 1. L.P.R.A. Enmda. Art. I. La Primera Enmienda aplica a Puerto Rico, bien sea a través de la Quinta Enmienda o de la Decimocuarta Enmienda. Aponte Martínez v. Lugo, 100 D.P.R. 282 (1971).
De un examen de la jurisprudencia, surge que el Tribunal Supremo ha tenido ante sí casos en que se ha visto en la necesidad de poner en balance y armonizar determinados derechos constitucionales cuando éstos confligen. En Aponte Martínez v. Lugo, supra, el Tribunal de Primera Instancia emitió un interdicto permanente para prohibir la publicación de un escrito preparado por un ex administrador de los bienes de la Iglesia Católica en Puerto Rico. Dicho administrador, luego de ser despedido por el Arzobispo de San Juan, le cursó una misiva a éste en la que le advertía que si no le contestaba dicha misiva, iba a enviar copia del escrito a varias personas y entidades, incluyendo al Departamento de Justicia. El Arzobispo le solicitó al Tribunal de Primera Instancia que emitiera un interdicto provisional y permanente para prohibirle al demandado la publicación del escrito en cuestión. El foro de primera instancia concedió el interdicto provisional y permanente y el demandado apeló la sentencia emitida.
El Tribunal Supremo abordó la contención del demandante de que la publicación del escrito en cuestión violaba su derecho a la privacidad. El alto foro determinó que dicho argumento no era suficiente para derrotar la libertad de palabra y expresión y destacó que no se trataba de una persona privada, sino de una persona pública. Al así resolver, el Tribunal Supremo revocó al foro de primera instancia y resolvió que no procedía el interdicto permanente por ser ilegal y nulo, por constituir una violación de la libertad de palabra y de prensa garantizadas por la Constitución de Puerto Rico y por la Primera Enmienda de la Constitución de Estados Unidos, al tratarse de un caso de censura previa.
El alto foro acogió el principio de que toda tentativa de censura previa llega al Tribunal acompañada de una *873 fuerte presunción de inconstitucionalidad y reconoce que cada vez son menores las excepciones a las que está sujeta la libertad de expresión. Entre dichas excepciones están las que aplican en tiempos de guerra y que no se permite la publicación de las fechas de salidas de los barcos, el número y localización de las tropas y el lugar donde están sitas las instalaciones militares.
El Tribunal Supremo también examinó el conflicto entre el derecho a la libertad de expresión y el derecho a la intimidad en E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436 (1975). En dicho caso, la controversia se dio en el contexto de un piquete frente al hogar de un funcionario público. El Tribunal de Primera Instancia dictó un entredicho provisional y un injunction preliminar y permanentemente mediante el cual le ordenó a la Hermandad de Empleados que se abstuviera de piquetear o de incitar a piquetear la residencia del Secretario del Trabajo o en cualquier otra forma menoscabar o invadir la privacidad o propiedad privada de éste y de su familia o alterar la paz y tranquilidad de éstos en su residencia privada. La Hermandad de Empleados apeló la sentencia y adujo que el injunction constituía una violación a la libertad de expresión y asamblea.
El Tribunal Supremo hizo un análisis y señaló que el derecho a la intimidad goza de un altísimo sitial en nuestra escala de valores, pero que lo mismo puede decirse del derecho a la libre expresión y de otras libertades. E.L.A. v. Hermandad de Empleados, supra, a las págs. 445-446. Dicho foro reconoció que en muchas situaciones, el derecho a la protección de la vida privada o familiar debe prevalecer sobre dichas libertades, pero que en otras puede ocurrir a la inversa, por lo que hay que analizar cada situación en particular. Id.
En dicho caso, el Tribunal Supremo halló justificado el injunction, al resolver que el piquete residencial de un funcionario público, en las circunstancias del caso, rebasaban los extensos límites de las libertades de expresión, petición y asamblea. El alto foro hizo referencia a que la persona contra la que se protestaba se convertía en un ente cautivo; que se le coartaba su derecho a la tranquilidad y al descanso; que le acosaba, se le inquietaba y se le alteraba no solamente el sosiego de su hogar, sino el de sus vecinos no envueltos en la controversia; además de que lo que interesaba expresar la Hermandad de Empleados podía comunicarlo en un piquete pacífico frente a las Oficinas del Derecho al Trabajo. Por consiguiente, en dicha situación, los costos síquicos a los ocupantes de la residencia y a sus vecinos excedían los beneficios derivables por la Hermandad de Empleados.
El Tribunal Supremo también consideró en Colón v. Romero Barceló, 112 D.P.R. 573 (1982), una sentencia que desestimó una demanda de daños e injunction incoada por los familiares de una persona cuya fotografía grotesca de su cadáver se difundió en un anuncio de televisión en una campaña política, sin obtener el consentimiento previo de los familiares. La demanda de daños estaba basada en la violación del derecho a la intimidad. El Tribunal de Primera Instancia estimó que no procedía la acción, debido a que se trataba de un anuncio de interés público para difundir la ocurrencia de un suceso criminal ya acaecido, de carácter noticioso y público, y con el fin de crear conciencia en el pueblo sobre la alta criminalidad en el país.
El Tribunal Supremo revocó la sentencia al determinar que no se justificó válidamente la infracción del derecho a la intimidad de los demandantes. En cuanto a la defensa levantada de que el anuncio en controversia se difundió en ejercicio del derecho constitucional a la libertad de expresión consagrado en la See. 4 del Art. II de nuestra Constitución, 1 L.P.R.A. Art. II, Sec. 4, el alto foro determinó que en dicho caso, el derecho a lo privado era de superior jerarquía a la libertad de expresión, debido a que se podía llevar a cabo el mensaje del anuncio en controversia de otra forma o utilizando otros medios, por lo que no se justificó la invasión a la intimidad.
Más recientemente, el Tribunal Supremo pasó juicio en un caso similar al de autos en el que una parte hacía un reclamo al derecho constitucional a la intimidad y otra parte reclamaba el derecho de libertad de expresión y de prensa. En Pérez Vda. Muniz v. Criado, 151 D.P.R._(2000), 2000 J.T.S. 105, el alto foro revocó al Tribunal de Primera Instancia que había emitido un injunction permanente para que un periódico se abstuviera de distribuir, entregar o difundir cualquier información, documentos, fotografías, negativos o reproducciones *874 obrantes en el expediente de autopsia del Instituto de Ciencias Forenses sobre el esposo asesinado de la demandante. La prohibición le impedía expresamente al reportero del periódico publicar las fotografías del cadáver.
Aunque la orden no iba dirigida al periódico, el alto foro estimó que el efecto de la misma resultaba, en una prohibición a la libertad del periódico para decidir el material que publicaba. Luego del Tribunal Supremo evaluar si un tribunal podía prohibirle a la prensa mediante un injunction publicar ciertas fotografías, por considerar que infringían el derecho a la intimidad consagrados en la Carta de Derechos de nuestra Constitución y en la Constitución de Estados Unidos, el alto foro resolvió que el injunction implicaba una censura permanente que confligía con la libertad de prensa.
El Tribunal Supremo, en dicho caso, reitera a los pronunciamientos hechos en Aponte Martínez en cuanto recogen la doctrina establecida en la jurisprudencia federal. A esos efectos, el alto foro señala que el ejercicio de la libertad de palabra y de prensa no depende de lo que se diga o publique sea cierto; que no puede coartarse dicha libertad en aras de evitar un escándalo; que la libertad de prensa es esencial para la vida de un país libre y esa libertad consiste en que no se le imponga censura previa a las publicaciones; y que no hay derecho a prohibir la publicación de ideas porque éstas sean impopulares, mortificantes o desagradables. Pérez Vda. Muñiz v. Criado, supra, a la pág. 1364. De igual forma, el Tribunal Supremo hace una recapitulación de la jurisprudencia en que ha tenido que ponderar qué derecho debe tener preeminencia entre el derecho a la libertad de expresión y el derecho a la intimidad y concluye que el derecho a la intimidad -aunque abarcador y relevante-, "no justifica la imposición de censura previa, máxima violación a la libertad de prensa”. Pérez Vda. Muñiz v. Criado, supra, a la pág. 1366.
El Tribunal Supremo reconoce que en sólo tres circunstancias específicas, los tribunales han permitido que se prohíba la publicación de determinada información. Dichas circunstancias son: (1) cuando una nación está en guerra; (2) cuando se trata de publicaciones obscenas; y (3) cuando se trata de exhortaciones a actos de violencia y al derrocamiento por la fuerza del gobierno ordenado. Pérez Vda. Muniz v. Criado, supra, a la pág. 1365.
Luego de evaluar los derechos constitucionales en conflicto en este caso de Pérez Vda. Muñiz v. Criado, supra, el Tribunal Supremo inclinó la balanza hacia el derecho a la libertad de prensa, al determinar que, a pesar de que las fotografías presentaban "imágenes desagradables, grotescas, morbosas e impactantes a nuestra sensibilidad humana", el injunction implicaba una censura permanente que confligía con la libertad de prensa, Pérez Vda. Muñiz v. Criado, supra, a la pág. 1366.
Por otro lado, el Tribunal Supremo también determinó en ese caso que, independientemente del efecto que el injunction dictado tenía sobre el derecho a la libertad de prensa, existía otra razón para anularlo y era la opción que tenía la demandante de contar con otro remedio en ley adecuado, consistente en la indemnización de daños y prejuicios, al amparo del Art. 1802, 31 L.P.R.A. sec. 5141.
De la jurisprudencia expuesta anteriormente, se puede constatar que la controversia que plantea el caso de autos no es ajena a nuestra jurisprudencia. El Tribunal Supremo ha reiterado que en casos en que estén en conflicto derechos constitucionales, se deben sopesar los intereses involucrados y determinar, a base de las circunstancias del caso, cuál prevalece. Colón v. Romero Barceló, supra, a la pág. 582. Ahora debemos enfrentamos a la tarea de determinar el peso relativo de la libertad de expresión y prensa y del derecho a la intimidad en las circunstancias específicas que presenta este caso.
En primer lugar, cabe destacar que el derecho a la libertad de expresión se puede aducir en pleitos entre particulares. Colón v. Romero Barceló, supra, a la pág. 582; Sucn. De Victoria v. Iglesia Pentecostal, 102 D.P.R. 20 (1974). En este caso en particular, están los derechos de libertad de palabra y de prensa reclamados por la estación de televisión (Televicentro) para difundir cualquier información que estime pertinente, máxime en un *875 programa en que se hacen críticas a políticos, figuras públicas y personas de la farándula. De otro lado, está el derecho a la intimidad reclamado por los recurridos, el Señor Héctor Marcano -quien es una figura pública-, la señora Wanda Hernández y el hijo de ambos, J.P.M.H., al amparo del cual solicitan una prohibición permanente para que Televicentro no divulgue más información sobre las alegaciones hechas por una familia en cuanto a la filiación del menor J.P.M.H. Luego de sopesar ambos reclamos de derecho, resolvemos que, en el caso de autos, el derecho de libertad de palabra y de prensa debe pesar más en la balanza que el derecho a la intimidad, puesto que el remedio de injunction permanente solicitado por los recurridos constituye una censura previa y una censura permanente y, según expusimos anteriormente, la jurisprudencia ha rechazado las tentativas de censura previa, especialmente las que se han llevado a cabo mediante injunction. Pérez Vda. Muñiz v. Criado, supra, a la pág. 1366. Asimismo, la información cuya publicación se quiere prohibir no recae dentro de las tres excepciones, para las cuales está permitida la censura previa.
A pesar de que las imputaciones hechas en el programa SuperXclusivo sobre los recurridos son serias y laceran la integridad familiar, no podemos pasar por alto que la esencia del derecho a la libertad de expresión y prensa estriba en impedir la restricción arbitraria del contenido de publicaciones, así como el medio, lugar y manera en que se realicen, no importa su veracidad, popularidad o simpatía. Pérez Vda. Muñiz v. Criado, supra, a la pág. 1363, citando con aprobación a Coss y U.P.R. v. C.E.E., 137 D.P.R. 877 (1995), 95 J.T.S. 15. De igual forma, "no hay derecho a prohibir la publicación de ideas porque éstas sean impopulares, mortificantes o desagradable". Id., a la pág. 1364.
Por otro lado, no podemos abstraemos del hecho de que el señor Héctor Marcano es una figura pública con poder de convocatoria; que utilizó su programa de televisión para reaccionar y desmentir las imputaciones que se le habían hecho en el programa SuperXclusivo de Televicentro; y que el Señor Marcano participó también en el programa "Ahora podemos hablar", de una hora de duración, que fue dedicado en su totalidad al tema en cuestión, donde éste pudo expresar su sentir sobre toda la situación y donde éste motu proprio mostró fotografías de él con la señora Wanda Hernández y fotografías de él con todos sus hijos. Es decir, al enseñar fotografías de su familia y hablar sobre ésta, por sus propias actuaciones, el señor Marcano renunció a la intimidad de él y de su familia. U.T.I.E.R. v. A.E.E., 149 D.P.R. _ (1999), 99 J.T.S. 156.
Finalmente, en el caso de autos, a pesar de que el Tribunal de Primera Instancia denegó el injunction permanente al resolver que la acción se había tomado académica por razón del acuerdo extrajudicial y del acuerdo judicial, lo cierto es que la sentencia tuvo el efecto real de haber emitido el injunction permanente, toda vez que le prohibía a la parte apelante que volviera a trasmitir, ventilar o dilucidar en el canal de televisión o en el programa SuperXclusivo cualquier otra cuestión concerniente a la filiación del menor o de su familia, en la medida en que se relacionara la información con dicho menor.
En el caso de autos, el Tribunal de Primera Instancia determinó que el injunction era el único recurso adecuado, porque no existía otra acción legal que los demandantes pudiesen presentar para detener que se hicieran manifestaciones en tomo a la filiación del menor que le afectaban a éste. Sentencia, a la pág. 8. Al así resolver, dicho foro erró, ya que no procedía que se emitiera el injunction preliminar, ni el permanente, pues los recurridos tenían la opción de entablar una acción de daños y perjuicios al amparo del Art. 1802 del Código Civil, supra.
Resolvemos, pues, que el segundo error también se cometió.
Finalmente, no creemos necesario entrar a discutir el tercer señalamiento de error, en vista de lo que aquí resolvemos. 
Con estos antecedentes, se revoca la sentencia del Tribunal de Primera Instancia y, en su lugar, se dicta otra en la que se deniega la petición de injunction presentada en este caso.
*876 Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Circuito de Apelaciones. La Juez Cotto Vives disiente con opinión.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 40
1. Citó, para sustentar su afirmación, la última legislación aprobada respecto a menores, que incluía la Carta de los Derechos del Niño, Ley Núm. 338 de 31 de diciembre de 1998, la Ley para el Amparo a Menores en el Siglo XXI, Ley Núm; 342 de 16 de diciembre de 1999 y la Ley Núm. 329 de 30 de diciembre de 1998, 32 L.P.R.A, Ap. Ill, R. 62.2. Aunque el tribunal reconoció que dicha legislación no era de aplicación al caso de autos, dicho foro señaló que servía para ilustrar el interés del Estado en la protección de los menores y sus familias.
2. El tercer señalamiento de error aducido consistía en que el Tribunal de Primera Instancia erró al no darle curso a una moción de Televicentro y Ramos en la que éstos solicitaron una orden de apercibimiento de desacato dirigida a los demandantes por si éstos incumplían el acuerdo provisional.