EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Roberto Vigoreaux Lorenzana y Mary Ann Cortés Camacho, etc.  Demandantes-Apelantes  vs.  Quizno's Sub, Inc.; Aprendo Strada, Inc. y Otros  Demandados-Apelados | Certiorari  2008 TSPR 38  173 DPR _____ |

Número del Caso: AC-2007-21

Fecha: 29 de febrero de 2008

Tribunal de Apelaciones:

> Región Judicial de San Juan – Panel IV

Juez Ponente:

> Hon. Luis Roberto Piñero González

Abogados de la Parte Peticionaria:

> Lcdo. René Arrillaga Armendáriz
> Lcdo. Ricardo Arrillaga Armendáriz
> Lcdo. Rafael E. Silva Almeyda

Abogados de la Parte Recurrida:

> Lcda. Dora M. Peñagarícano Suárez
> Lcdo. José M. Couto-LLinás

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Roberto Vigoreaux Lorenzana
y Mary Ann Cortés Camacho,
etc.

    Demandantes-Apelantes

       v.                     AC-2007-21   Certiorari

Quizno's Sub, Inc.; Aprendo
Strada, Inc. y Otros

    Demandados-Apelados

Opinión del Tribunal emitida por el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 29 de febrero de 2008.

En el caso de epígrafe nos corresponde establecer un delicado balance entre dos derechos constitucionales importantes: la libertad de expresión, en una situación en que la expresión impugnada es de naturaleza comercial; y el derecho a la intimidad, en su vertiente del derecho a la propia imagen. Por entender que, en las circunstancias particulares de este caso, el derecho a la intimidad consagrado en la Constitución del Estado Libre Asociado de Puerto Rico y el derecho patrimonial a la propia imagen del Sr. Roberto Vigoreaux prevalecen sobre los intereses comerciales de Quizno's Sub, Inc., revocamos el dictamen recurrido.

## I.

Los hechos de este caso no están en controversia. Como parte de una campaña publicitaria de mercadeo, la cadena de restaurantes de comida rápida Quizno's Sub, Inc. (en adelante, Quizno's) publicó un anuncio en la prensa escrita del país, en el cual aparecían unas fotografías del Sr. Carlos Pesquera Morales y del Sr. Roberto Vigoreaux Lorenzana (en adelante, señor Vigoreaux Lorenzana o el peticionario). Véase Apéndice I. Ambos fueron candidatos que perdieron en las primarias celebradas el 9 de noviembre de 2003 de sus respectivos partidos, apenas cinco días antes de la publicación de la mencionada publicación comercial.[1]

El referido anuncio promocionaba un emparedado de pollo que vende Quizno´s con la frase *"Para los que se quedaron con las ganas"* sobrepuesta entre las dos fotografías. Debajo de éstas, se encontraba una imagen del sándwich y la frase *"Vuelve el delicioso Chicken Carbonara"*.[2] Surge del expediente que Aprendo Strada, Inc., representante de Quizno's en Puerto Rico, no solicitó autorización ni le pagó dinero alguno al señor Vigoreaux Lorenzana para utilizar su imagen en el mencionado anuncio. Tampoco lo hizo J. Walter

---

[1] El señor Vigoreaux Lorenzana era candidato a la alcaldía de San Juan por el Partido Popular Democrático, mientras que el señor Pesquera Morales era candidato a la gobernación de Puerto Rico por el Partido Nuevo Progresista.

[2] Dicho anuncio se publicó en una página completa del periódico El Nuevo Día. Ambas fotografías ocupaban más de dos terceras partes del anuncio. Además, en letras pequeñas insertadas en la esquina inferior izquierda, se anunciaba lo siguiente: "Lleva este anuncio hoy a tu Quizno's favorito y recibe $2 de descuento en el delicioso Chicken Carbonara".

Thompson, agencia de publicidad a cargo de las cuentas publicitarias de Quizno's en Puerto Rico.[3]

En virtud de lo anterior, el señor Vigoreaux Lorenzana, su esposa Mary Ann Cortés Camacho, la sociedad legal de gananciales compuesta por ambos y Vigomar, Inc. presentaron una demanda de daños y perjuicios contra Quizno´s, Aprendo Strada, Inc., J. Walter Thompson y otros (en adelante, Quizno's o los recurridos) ante el Tribunal de Primera Instancia. En dicha demanda, arguyeron que la reproducción de la imagen del señor Vigoreaux Lorenzana por parte de los codemandados se hizo sin su autorización expresa o tácita y sin que éste hubiese recibido compensación alguna por su uso. Por tanto, adujeron que la publicación del anuncio violó el derecho a la propia imagen y el derecho de publicidad del señor Vigoreaux Lorenzana. En vista de ello, solicitaron el pago de $500,000.00 como resarcimiento por los daños morales sufridos a base de la alegada exposición del señor Vigoreaux Lorenzana a la vergüenza y humillación, y por los daños económicos alegadamente sufridos como consecuencia de la apropiación de su imagen comercial sin obtener el consentimiento correspondiente.

Luego de varios incidentes procesales, el foro de instancia dictó sentencia sumaria a favor de Quizno´s y los demás codemandados. Específicamente, el tribunal sentenciador determinó que el señor Vigoreaux Lorenzana era

---

[3] Se desprende del expediente que tampoco se obtuvo el consentimiento del señor Pesquera Morales, ni que se le remuneró por la publicación del anuncio.

una figura pública por su participación en la palestra política en el momento de la publicación del anuncio y que, por tanto, era inmeritorio su reclamo de derecho a su propia imagen, toda vez que la publicación de la fotografía se encuentra en la llamada esfera de la historia contemporánea. Además, concluyó que el señor Vigoreaux Lorenzana no podía invocar su derecho a la intimidad ni reclamar daños por alegadamente haber sido objeto de humillación y burla, dado que el referido anuncio constituyó una parodia o sátira política protegida por el derecho a la libertad de expresión que cobija a los codemandados.

Inconforme, el señor Vigoreaux Lorenzana, su esposa, y Vigomar, Inc., acudieron ante el Tribunal de Apelaciones, el cual confirmó la sentencia apelada. En síntesis, dicho foro concluyó que en el balance de intereses, el derecho de intimidad del señor Vigoreaux Lorenzana cede ante el derecho a la libertad de expresión comercial de Quizno´s y los demás codemandados. Determinó, al igual que el Tribunal de Primera Instancia, que el anuncio en referencia constituye una sátira política cuya divulgación está protegida por el derecho constitucional a la libertad de expresión, a pesar de su claro propósito comercial o lucrativo. Además, adujo que como la fotografía publicada no revelaba aspectos íntimos y privados del señor Vigoreaux Lorenzana, a éste no le amparaba expectativa de intimidad alguna.

Por no estar de acuerdo con dicho dictamen, el señor Vigoreaux Lorenzana, su esposa, y Vigomar, Inc., acuden ante este Tribunal. En esencia, sostienen que el foro apelativo

incidió al no reconocerle al señor Vigoreaux Lorenzana su derecho a la propia imagen, el derecho a la intimidad y el derecho a la publicidad, aun cuando Quizno´s se apropió de su imagen en un anuncio para vender un sándwich con el único objetivo de lucrarse económicamente, obviando así la doctrina de enriquecimiento injusto. Específicamente, el señor Vigoreaux Lorenzana invoca la causal de daños reconocida en Colón v. Romero Barceló, 112 D.P.R. 573 (1982), por violación al derecho a la intimidad en su vertiente del derecho a la propia imagen.

Examinado el recurso, expedimos el auto. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

Ninguna ley en nuestro ordenamiento jurídico atiende expresamente la controversia en el caso de autos, a saber, si se infringió el derecho de intimidad y publicidad del señor Vigoreaux Lorenzana al incluir en un anuncio comercial publicado en un periódico de circulación general una foto suya sin su consentimiento, haciendo alusión a su derrota reciente en la contienda primarista. Ante la ausencia de legislación específica, las normas aplicables a este caso son aquéllas derivadas del derecho general de responsabilidad extracontractual que surge del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, lo que —a su vez— se debe enmarcar en los parámetros constitucionales invocados por las partes.

**A.**

Sabido es que la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico protege expresamente el derecho fundamental a la intimidad y dignidad de las personas. Art. II, Secs. 1 y 8, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, págs. 257, 301.[4] En ocasiones anteriores, hemos expresado que éste es un derecho de la personalidad, el cual goza de la más alta protección bajo nuestra Constitución y faculta a su titular a impedir o limitar la intervención de terceros –sean particulares o poderes públicos– contra la voluntad del sujeto. López Tristani v. Maldonado Carrero, res. 8 de septiembre de 2006, 2006 T.S.P.R. 143; Castro Cotto v. Tiendas Pitusa, Inc., 159 D.P.R. 650 (2003).

Dada la primacía y la envergadura de este derecho fundamental, hemos reconocido que la protección a lo privado opera *ex proprio vigore* y puede hacerse valer entre personas privadas, eximiéndolas así del requisito de acción estatal necesario para activar los derechos constitucionales de los ciudadanos. López Tristani v. Maldonado Carrero, *supra*; López Rivera v. E.L.A., res. 11 de julio de 2005, 2005 T.S.P.R. 102; Cotto v. Tiendas Pitusa, Inc., *supra*, pág. 658; Vega

---

[4] El derecho a la intimidad está expresamente consagrado en la Sección 8 del Artículo II de nuestra Constitución, el cual dispone que "[t]oda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Art. II Sec. 8, Const. E.L.A., *supra*. Por su parte, la Sección 1 del Artículo II establece la inviolabilidad de la dignidad del ser humano como principio básico que inspira los demás derechos incluidos en la Carta de Derechos. Véase Vega Rodríguez v. Telefónica de P.R., 156 D.P.R. 584, 601 (2002); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 308 (1998).

Rodríguez v. Telefónica de P.R., *supra*, pág. 600-01 (2002); Arroyo v. Rattan Specialties, 117 D.P.R. 35, 64 (1986); Colón v. Romero Barceló, *supra*, pág. 575. Tal protección es necesaria no tan sólo para que se pueda lograr una adecuada paz social o colectiva, sino para alcanzar una calidad mínima de la vida humana, al mantener un reducto de ésta fuera del alcance de terceros. López Tristani v. Maldonado Carrero, *supra*; Arroyo v. Rattan Specialties, *supra*, pág. 62. Es por ello que el derecho a la intimidad se puede hacer valer mediante una demanda por daños al amparo del Art. 1802 del Código Civil de Puerto Rico, *supra*, de forma tal que se pueda resarcir al agraviado por los perjuicios causados al violar el deber de no intervenir con la vida privada de los demás. Véanse Castro Cotto v. Tiendas Pitusa, Inc., *supra*, pág. 659; Soc. de Gananciales v. Royal Bank de P.R., *supra*, pág. 201-202, citando a Colón v. Romero Barceló, *supra*.

A la luz de los hechos particulares de este caso, reiteramos que el derecho de daños en Puerto Rico se rige, tanto en su forma como en su contenido, por el sistema del derecho civil. Valle v. American International Insurance Co., 108 D.P.R. 692 (1979). Por tanto, y a tenor con la normativa constitucional examinada, es menester señalar que la doctrina civilista reconoce el derecho a la propia imagen como un derecho de la personalidad, protegido por principios constitutivos del ordenamiento jurídico. En primer lugar, se considera como imagen la proyección o representación de la figura humana mediante cualquier procedimiento o técnica de reproducción. A su vez, la imagen propia constituye un

atributo fundamental con el cual se individualiza socialmente a la persona; es decir, es parte integral de la identidad del sujeto representado. López Tristani v. Maldonado Carrero, *supra*.

A tales efectos, el tratadista Eduardo Vázquez Bote explica que "[s]obre esa imagen se reconoce un derecho, inherente a la personalidad, que sólo puede actuar, normalmente, el sujeto de la imagen misma". E. Vázquez Bote, Los denominados derechos de la personalidad, Boletín Mexicano de Derecho Comparado, Año VI, Núm. 18, Septiembre-Diciembre, 1973, pág. 425. En vista de ello, hemos expresado que la propia imagen es digna de tutela por su estrecha relación con la intimidad de la persona como con su honor. López Tristani v. Maldonado Carrero, *supra*; C. Fernández Sessarego, Derecho a la identidad personal, Editorial Astrea, Buenos Aires, Argentina, 1992, sec. 17, págs. 138-142; J. Santos Briz, La responsabilidad civil, Ed. Montecorvo, Madrid, España, 1993, vol. I, págs. 199-201.

A pesar de que ninguna ley especial ni el Código Civil de Puerto Rico contempla expresamente el derecho a la propia imagen, este Tribunal ha reconocido el mencionado derecho subjetivo para configurar una causa de acción en daños por violación al derecho a la intimidad, el cual, según indicamos, surge expresamente de la Constitución del Estado Libre Asociado de Puerto Rico. Const. ELA. Art. II, Secs. 1 y 8, *supra*. En esencia, hemos establecido que toda persona tiene derecho a controlar dónde, cuándo y cómo se le toma una fotografía o se reproduce de cualquier forma su imagen.

Bonilla Medina v. Partido Nuevo Progresista, 140 D.P.R. 294 (1996); Cólon v. Romero Barceló, *supra*.

Al reconocer el derecho a la propia imagen como una vertiente del derecho a la intimidad en Bonilla Medina v. PNP, *supra*, pág. 301, y Cólon v. Romero Barceló, *supra*, pág. 578, expresamos que

> [e]n virtud de este derecho toda persona puede oponerse a que se reproduzca su efigie o se obtengan pruebas fotográficas de la misma, por personas a quienes no hayan concedido autorización expresa o tácita […]. La autorización para hacer una fotografía no incluye la autorización para publicarla, ya que la publicación afecta la personalidad del interesado más intensamente que el simple hecho de retratarlo. La autorización para ser publicada puede incluir alguna limitación cuya amplitud se determinará según la interpretación del caso concreto. Citando a J. Santos Briz, El Derecho de Daños, Madrid, Ed. Rev. Der. Privado, 1963, págs. 178-179.

A su vez, en tales pronunciamientos reconocimos la existencia de varias defensas oponibles a esta causa de acción, al señalar que se considera admisible, sin perjuicio de otras causas de justificación, la publicación o la toma de fotografías en la esfera llamada de historia contemporánea (*aus dem Bereich der Zeitgeschichte*) no referida a la vida privada, o cuando reproduzcan reuniones, manifestaciones u otros actos públicos semejantes o sucesos o localidades públicos en los que la persona fotografiada sea una figura accesoria. Bonilla v. PNP, *supra*, pág. 302; Cólon v. Romero Barceló, *supra*, pág. 578; citando a J. Santos Briz, *supra*.

Además, en ambos casos concluimos que se admite la publicación de fotografías hechas sin petición del interesado cuando así lo justifique un interés público o un serio

interés artístico, o cuando el derecho constitucional a la libertad de expresión del demandado prevalezca sobre los intereses del sujeto fotografiado. *Id.* Véase además, L. Diez-Picazo & A. Gullón, Sistema de Derecho Civil, Tecnos, 1992, pág. 377.

A tenor con lo anterior, señalamos que toda lesión de la personalidad es antijurídica salvo que concurra una causa de justificación o el consentimiento del afectado, o que el acto se considere socialmente adecuado por ser conforme a derecho en atención a la ordenación ético social de la vida en común. Cólon v. Romero Barceló, *supra*, pág. 580; citando a J. Santos Briz, *supra*, págs. 165-166. No obstante, también aclaramos que aun en estos casos no debe tolerarse tomar o publicar una fotografía cuando a ello se oponga un interés legítimo, como lo sería el derecho a la intimidad del fotografiado. Igualmente, debe considerarse inadmisible la publicación de una fotografía cuando la toma de la misma haya violado intereses dignos de una protección predominante.

Ahora bien, el derecho a la propia imagen en otras jurisdicciones no se limita a ser considerado como una vertiente derivada del derecho a la intimidad. A diferencia de la normativa mencionada, Castán propone que la tutela de la imagen se manifiesta como una forma o derivación de la protección del honor. J. Castán Tobeñas, Los derechos de la personalidad, Revista General de Legislación y Jurisprudencia, Tomo XXV, 1952, pág. 56. Por tanto, el mencionado derecho se violenta sólo cuando su publicidad o difusión cause una injuria u ofensa a la personalidad, sin

que necesariamente se interfiera con la intimidad del sujeto. Según Castán, esta normativa doctrinal ha sido adoptada en el ordenamiento de varios países civilistas.[5]

Por otro lado, la tendencia actual predominante —tanto en el derecho civil como en el derecho común anglosajón— es el reconocimiento de la protección de la imagen como un derecho independiente.[6] Este derecho otorga a su titular la facultad *erga omnes* de excluir la reproducción y publicación de la propia imagen por un tercero que carece del consentimiento para ello, al dar pie a la responsabilidad extracontractual del que publica y reproduce la misma. De acuerdo a esta interpretación, no se trata de una mera protección frente al autor de la fotografía, sino de un límite al derecho de libertad de expresión de la ciudadanía. Véase X. O'Callaghan, Libertad de expresión y sus límites: honor, intimidad e imagen, Ed. Revista de Derecho Privado, Madrid, 1991, pág. 117-118. A pesar de la naturaleza autónoma del derecho a la propia imagen, en esta corriente doctrinal, el Tribunal Constitucional español ha expresado que éste es "un derecho de la personalidad, derivado de la dignidad humana y dirigido a la protección del patrimonio moral de las personas". STC

---

[5] Véase, a modo comparativo, Art. 10, Código Civil de Italia; Art. 31, Ley de Propiedad Intelectual de Argentina.

[6] En España, el derecho a la propia imagen es de jerarquía constitucional. Art. 18.1, Const. española 1978. Además, existe una ley especial que tipifica como intromisión ilegítima la utilización de la imagen de una persona para fines publicitarios, comerciales o de naturaleza análoga. Ley de 5 de mayo 1982. Véanse además, F. Herrero-Tejedor, Honor, Intimidad y Propia Imagen, Editorial Colex, 2ª ed., Madrid, 1994, pág. 100; J. Royo Jara, La Protección del Derecho a la

14/2003, de 28 de enero de 2003. Véase además, STC 81/2001, de 26 de marzo de 2001; STC 99/1994, de 11 de abril de 1994.

De otro modo, en la doctrina civilista se ha planteado la existencia de un derecho patrimonial a la imagen, relativamente ajeno al derecho de la personalidad. Ésta es la normativa que ha adoptado la jurisprudencia federal y el derecho común de gran parte de los estados, bajo la figura del derecho a la publicidad ("right of publicity").[7] Al amparo de esta protección patrimonial, que se caracteriza como un derecho de propiedad intelectual, el sujeto tiene derecho a participar económicamente en la comercialización de su propia imagen, su nombre o su parecido. S. Dogan & M. Lemley, What the right of publicity can learn from trademark law, 58 Stan. L. Rev. 1161 (2006); F. Igartúa Arregui, La apropiación comercial de la imagen y de los nombres ajenos, Tecnos, Madrid, 1991, págs. 76-98; X. O´Callaghan, supra.

Aunque se puede decir que el valor económico de la imagen de una persona es de naturaleza intangible, ésta puede tener un valor comercial o publicitario que responda a las características y esfuerzos particulares de la persona en un ámbito determinado. En el mundo contemporáneo, la explotación de las imágenes de artistas y celebridades es indudablemente un gran negocio, que se utiliza constantemente en los mercados lucrativos de publicidad. A su vez, la utilización

_____

Propia Imagen, Editorial Colex, Madrid, 1987; Arts. 22 y 23, Kunsturhebergesetz, Ley de Creación Artística Alemana (KUG).

[7] En algunos estados el derecho a la publicidad es de naturaleza estatutaria. Véase California Civil Code Sec.

no autorizada de la imagen de una persona para propósitos comerciales, sin su remuneración o consentimiento, generalmente da lugar a una causa de acción en daños por violación al derecho a la publicidad de la persona afectada. R. Schechter & J. Thomas, Intellectual Property: The Law of Copyrights, Patents and Trademarks, Thomson & West, 2003, págs. 263-269.[8]

De hecho, cabe señalar que el derecho patrimonial a la propia imagen —o el derecho a la publicidad— también se ha enraizado en el derecho a la intimidad. R.A. Epstein, Torts, Sec. 19.3 (1999). En su célebre e influyente artículo sobre la intimidad, el decano Prosser demostró que la "privacidad" es un término sombrilla que incluye cuatro diversas causas de acción que dan lugar a la imposición de responsabilidad extracontractual. W. L. Prosser, Privacy, 48 Cal. L. Rev. 383 (1960). Éstas incluyen, a saber, la protección del individuo

---

3334.1; Virginia Code Sec. 8.01-40. En otros estados, la doctrina se ha desarrollado mediante jurisprudencia.

[8] A tales efectos, la doctrina sugiere que en estos casos existen daños económicos como consecuencia de una disminución de los ingresos que pudieron haberse obtenido por la participación consentida del individuo en ese mercado de publicidad; o por causa de un enriquecimiento injusto del que ha obtenido beneficios a costa de las características de la identidad de otra persona sin compensarle por ello. Para un análisis económico del derecho patrimonial a la propia imagen, véase E. Amat. Llari, El derecho a la propia imagen y su valor publicitario, La Ley, Madrid, 1992, págs. 19-23. Véase además, R. Posner, Economic Analysis of Law, 6ta ed. Aspen Publishers, New York, 2003, págs. 42-43. Al hacer el cómputo del valor comercial de la imagen para resarcir los daños económicos, se pueden tomar en cuenta, como variables reductoras de la indemnización, los beneficios derivados por el sujeto a raíz de la publicación. Éste sería el caso de un candidato político que se beneficia de la publicidad positiva, aunque sea para fines comerciales y lucrativos de

contra la intromisión indebida en su vida privada; la prohibición de revelar o divulgar aspectos privados e íntimos de la persona, ocasionando vergüenza y humillación como consecuencia de su publicación; y la responsabilidad por distorsionar y representar bajo una falsa luz las características individuales de la persona, sacando públicamente de contexto sus posturas o pronunciamientos sin que medie justificación alguna. Por último, y en lo pertinente, **el derecho a la intimidad incluye una causa de acción contra todo aquel que se apropia indebidamente del nombre, imagen, o parecido de una persona para propósitos lucrativos o comerciales.** [9]

### B.

Por otra parte, la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico consagra la libertad de expresión como uno de los valores de la más alta jerarquía constitucional, al disponer que "[n]o se aprobará ley alguna

---

un tercero. Véase, a modo ilustrativo, Paulsen v. Personality Postres, 59 Misc. 2d. 444, 299 N.Y.S. 2d 501 (1968).

[9] Esta causa de acción por violación al derecho a la publicidad fue reconocida como una causa de acción derivada del derecho a la intimidad en Zacchini v. Broadcasting Co., 433 U.S. 562 (1977). En ese caso, el Tribunal Supremo Federal hizo un balance entre los intereses económicos que emanan de la identidad de una celebridad y el interés público en la publicación no autorizada y no remunerada de su imagen. El Tribunal Supremo Federal determinó que tal apropiación de la imagen del demandante fue indebida y constituyó una violación a su derecho patrimonial a la propia imagen. No obstante, en ese caso queda claro la dicotomía entre la causa de acción por virtud del derecho a la intimidad, el cual protege contra las angustias mentales que resultan de publicidad no deseada; y el derecho a la publicidad, el cual protege intereses pecuniarios y no emocionales. Véase, a modo ilustrativo, Ventura v. Titan Sports, Inc., 65 F.3d 725, 730 (8vo Cir. 1995).

que restrinja la libertad de palabra o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios". Art. II, Sec. 4, Const. E.L.A., *supra*. Este Tribunal ha expresado reiteradamente que la libertad de expresión es una "raíz indiscutible del sistema democrático de gobierno". Bonilla v. PNP, *supra*, pág. 299; Mari Bras v. Casañas, 96 D.P.R. 15, 20-21 (1968). A su vez, hemos establecido en casos de daños y perjuicios derivados del derecho a la intimidad que la libertad de expresión también puede ser una defensa, pues el ejercicio legítimo de un derecho es una causa de exclusión de antijuridicidad que elimina la culpa. Véanse Bonilla v. PNP, *supra*; Colón v. Romero Barceló, *supra*.[10]

En armonía con esta normativa, hemos enfatizado que la expresión política debe recibir el más alto grado de protección constitucional en nuestra sociedad pluralista. El libre intercambio de ideas, opiniones e información sobre los procesos gubernamentales y políticos permite que la toma de decisiones se realice de manera democrática. Bonilla v. PNP, *supra*. Por tanto, es evidente la preeminencia de la expresión política dentro de la protección constitucional a la libertad de expresión.

Ahora bien, es preciso distinguir entre la expresión política y la expresión comercial en nuestro ordenamiento constitucional. Hemos expresado anteriormente que el valor

---

[10] Véase además, R. Colón Cortés, Reconstruyendo la casa de cristal: la responsabilidad civil extracontractual derivada de los daños ocasionados al derecho a la intimidad, 72 Rev. Jur. U.P.R. 695 (2003).

superior otorgado a la libertad de expresión "no supone una irrestricción absoluta, de forma que no pueda subordinarse a otros intereses cuando la necesidad y conveniencia pública lo requieran". Muñiz v. Administrador del Deporte Hípico, 156 D.P.R. 18, 24 (2002); Bonilla v. PNP, *supra*, pág. 300; Mari Brás v. Casañas, *supra*, pág. 21. Sin embargo, también hemos señalado que las limitaciones a la libertad de expresión serán interpretadas restrictivamente, de manera que no abarquen más de lo imprescindible. Muñiz v. Administrador del Deporte Hípico, *supra*; Velázquez Pagán v. A.M.A., 131 D.P.R. 568, 577 (1992).

Aunque no cabe duda que la expresión para fines lucrativos y comerciales se encuentra bajo el ámbito de protección de las constituciones de Puerto Rico y de los Estados Unidos, ésta puede ser regulada sustancialmente por el Estado con mayor facilidad. Véase In re Gervitz Carbonell, res. 28 de julio de 2004, 2004 T.S.P.R. 141. El propósito fundamental de este tipo de expresión es promover una transacción comercial, no necesariamente el libre intercambio de ideas. Por tanto, la expresión comercial está sujeta a una protección constitucional menos rigurosa que otras formas de expresión, como lo es la expresión política.[11]

---

[11] Véase, a modo ilustrativo, Bd. of Trustees v. Fox, 492, U.S. 469 (1989); Posadas de Puerto Rico Associates v. Tourism Co. Of Puerto Rico, 478 U.S. 328 (1986); Va. Pharmacy Bd. v. Va. Consumer Council, 425 U.S. 748 (1976), Capital Broadcasting Co. V. Mitchell, 333 F. Supp. 582. (D.D.C. 1971), 405 U.S. 1000 (1972). Además, el Tribunal Supremo Federal ha sugerido que si se utiliza un mensaje social para la promoción de un producto o marca, el mensaje en su

Por último, reiteramos que la libertad de expresión se puede aducir en pleitos entre particulares. Colón v. Romero Barceló, *supra*, pág. 582; ELA v. Hermandad de Empleados, 104 D.P.R. 436 (1975); Sucn. de Victoria v. Iglesia Pentecostal, 102 D.P.R. 20 (1974). En los referidos casos, sopesamos los intereses envueltos –a saber, la libertad de expresión y el derecho a la intimidad– para determinar cuál derecho prevalece a base de las circunstancias particulares de la controversia.

En esta ocasión, precisamente, nos corresponde establecer un balance entre los intereses de la libre expresión de Quizno´s y los intereses del señor Vigoreaux Lorenzana sobre su intimidad e imagen propia.

### III.

### A.

El señor Vigoreaux Lorenzana alega que sufrió una violación del derecho a la propia imagen, del derecho a la intimidad y de su derecho de publicidad por la publicación de su fotografía en un anuncio comercial sin su consentimiento. Antes de dilucidar la tensión imperante entre los intereses constitucionales invocados por las partes, debemos evaluar la aplicación de alguna de las causas de justificación y las defensas oponibles al derecho a la propia imagen que reconocen nuestra jurisprudencia y la doctrina civilista.

---

totalidad constituye una expresión comercial. Bolger v. Youngs Drug Products Corp., 463 U.S. 60 (1983).

Tanto los codemandados como los foros apelativos aducen que la fotografía publicada se encuentra en la llamada esfera de historia contemporánea, conforme a nuestros pronunciamientos en Bonilla v. PNP, *supra,* y Colón v. Romero Barceló, *supra*. En dichos casos, expresamos que la publicación o la toma de fotografías como medio para difundir la historia contemporánea, cuando no se trate de la vida privada del objeto del individuo, no conllevará responsabilidad extracontractual. En tales supuestos, se entendería que el derecho a la propia imagen cede ante el interés público apremiante de acceso a la información y la divulgación de ideas. A su vez, también expresamos que la doctrina civilista permite tomar o publicar la fotografía de una persona, aun sin su consentimiento, cuando ésta sea una figura accesoria en alguna reunión, manifestación u otro acto o suceso público.[12]

En el caso de autos, surge del expediente que la fotografía del señor Vigoreaux Lorenzana publicada en el anuncio de Quizno´s no es, ni se obtuvo, de forma escandalosa. A diferencia de Colón v. Romero Barceló, *supra*, no se trata de una foto grotesca utilizada para "capitalizar" a costa del dolor ajeno. La mencionada fotografía había sido publicada anteriormente en un periódico de circulación general, y no revelaba aspectos privados o íntimos del señor

---

[12] A raíz de ello, la causa de acción por el derecho a la propia imagen en Bonilla no procedió, entre otras razones, porque el demandante era una figura accesoria en el anuncio político publicado por la campaña del gobernador Pedro Rosselló González, y la fotografía se tomó en el contexto de un evento público.

Vigoreaux Lorenzana. Sin embargo, a pesar de que en el caso de epígrafe la fotografía se tomó en un evento público, la efigie del señor Vigoreaux Lorenzana no era una figura accesoria ni en el anuncio ni en la propia imagen fotográfica publicada por Quizno´s. Todo lo contrario, las fotografías del señor Vigoreaux Lorenzana y del señor Pesquera Morales ocupan una posición céntrica y prominente en el anuncio de referencia.[13] De hecho, cada fotografía ocupa casi la mitad del mencionado anuncio, que a su vez constituyó media página del periódico El Nuevo Día.

Por otro lado, no se desprende del expediente, ni ha sido alegado por las partes, que la fotografía ostente un serio interés artístico que justifique su publicación sin el consentimiento del peticionario. Mucho menos se trata de una fotografía que se publica por razón de interés público. Conforme a nuestros pronunciamientos en Cólon v. Romero Barceló, supra, pág. 581, la causa de exclusión de antijuridicidad referente al interés público "prevalece cuando la intromisión a la intimidad es necesaria e inevitable y constituye el medio más adecuado para obtener un fin lícito". Claramente, la expresión comercial de Quizno´s en controversia no fue el medio más adecuado para mercadear

_____

[13] Además, en Bonilla v. PNP, supra, pág. 302, también enfatizamos que aquellos hechos no trataban de una persona que gozaba de amplio reconocimiento en Puerto Rico. Dicha conclusión sustentó el carácter de accesoriedad de la fotografía, por lo que resolvimos que no procedía la concesión de un remedio en daños a favor del señor Bonilla. Tales hechos son claramente distinguibles del caso de autos, pues las partes han estipulado, y es de conocimiento general,

sus productos, ni tampoco constituyó una intromisión inevitable y necesaria contra el derecho a la propia imagen del señor Vigoreaux Lorenzana.[14]

Ahora bien, en vista de que la fotografía no revelaba aspectos de la vida privada del peticionario, y dado que la misma no se tomó de forma escandalosa, el foro apelativo concluyó que el derecho a la intimidad del señor Vigoreaux Lorenzana no fue infringido. Además, adujo que por ser figura pública, "[éste] no podía tener expectativa de privacidad alguna." Para llegar a esta conclusión, el tribunal apelativo limitó el alcance del derecho a la intimidad a supuestos donde hay una intromisión indebida con los aspectos de la vida privada del demandante. Ciertamente, la publicación de la fotografía no constituyó una interferencia con la esfera íntima y privada de la vida del señor Vigoreaux Lorenzana.

No obstante, y a tenor con la normativa anteriormente expuesta, el derecho a la intimidad también incluye una causa de acción contra todo aquel que se apropia indebidamente del nombre, imagen, o parecido de una persona **para propósitos comerciales**. Al partir de la premisa que los objetivos de Quizno´s en la publicación del anuncio bajo nuestro escrutinio eran evidentemente comerciales, no cabe duda que

que el señor Vigoreaux Lorenzana es una figura pública, conocido en los ambientes de la política y del espectáculo.

[14] Cabe destacar que en gran parte de las jurisdicciones civilistas, las excepciones mencionadas, incluyendo las doctrinas de historia contemporánea (*aus dem Bereich der Zeitgeschichte*) y figuras públicas, no aplican cuando la imagen se utiliza para propósitos comerciales. Véase Gerstenberg, Urheberrecht Kommentar (dir. Schricker) 1987,

la diseminación de la fotografía configuró la utilización indebida de la imagen del peticionario. Por tanto, el tribunal apelativo erró al determinar que al señor Vigoreaux Lorenzana no le amparaba el derecho a la intimidad, en la vertiente del derecho a la propia imagen.

Aclarado lo anterior, debemos considerar la validez de la conclusión de los foros recurridos, en el sentido de que el anuncio de referencia constituye una hipérbole retórica, una parodia y una sátira política cuya divulgación está protegida por el derecho constitucional a la libertad de expresión, a pesar de su claro propósito comercial o lucrativo.

**B.**

En primer lugar, afirmamos nuevamente que la libertad de expresión es una defensa oponible a los casos de derecho a la propia imagen y a los casos de libelo, pues su ejercicio legítimo consiste en una causa de exclusión de antijuridicidad que elimina la culpa. Sin embargo, hemos expresado que no debe confundirse el derecho a la propia imagen con la difamación. Algunos de los rasgos que distinguen la acción en daños derivada de la violación al derecho a la propia imagen del libelo son: (i) que no se trata de una publicación en ejercicio de la libertad de prensa, pues es una persona o entidad particular quien promueve la publicación; (ii) la acción en daños por violación al derecho a la propia imagen no requiere que la

_____

pág. 770 en F. Igartúa Arregui, *supra*, pág. 123-128; E. Amat Llari, *supra*, pág. 65.

reproducción tenga impacto ofensivo alguno, y; (iii) la verdad no es defensa. Pérez Rosado v. El Vocero, 149 D.P.R. 427, 443 (1999).[15]

Por tanto, es menester señalar que las causas de justificación invocadas por el foro apelativo y por los recurridos -a saber, la sátira, la parodia y la hipérbole retórica- sólo han sido reconocidas por este Tribunal en casos de libelo, y no en casos de violación al derecho a la propia imagen ni en casos de expresión comercial. Véase Garib Bazain v. Clavell, 135 D.P.R. 475 (1994).[16] En vista de ello, nos corresponde evaluar estas figuras a la luz de los hechos particulares del caso de autos.

A tenor con la casuística del Tribunal Supremo Federal, y a modo ilustrativo, definimos la figura de hipérbole retórica como una expresión alegadamente difamatoria que no es accionable si se utiliza en un sentido figurativo, flexible y

---

[15] Véase, a modo ilustrativo, Zacchini v. Scripps-Howard Broad. Co., *supra*, pág. 574. En este caso, el Tribunal Supremo Federal indicó que el estándar de malicia real, según elaborado para casos de difamación en New York Times Co. v. Sullivan, 376 U.S. 254 (1965), no aplica a supuestos de derecho a la publicidad.

[16] A tales efectos, y a modo persuasivo, Nowak & Rotunda expresan lo siguiente:

> The Supreme Court has not yet held that First Amendment principles should restrict defamation or privacy actions when the subject matter of the action is a commercial performance or commercial information. **Invasion of an individual's right of publicity for commercial purposes may be subjected to greater state regulation than publication of information regarding a person´s private life or activity when that publication or activity is unrelated to a commercial venture.** Nowak & Rotunda, Treatise on Constitutional Law: Substance and

no necesariamente por su significado literal. Garib Bazain v. Clavell, *supra*, pág. 486. Es decir, la hipérbole retórica es una defensa oponible a las imputaciones de falsedad o mendacidad de una expresión alegadamente libelosa. Véase, a modo ilustrativo, Greenbelt Pub. Assn. v. Bresler, 398 U.S. 6 (1970).

Claramente, los foros recurridos erraron al aplicar esta doctrina al caso de autos. El presente caso versa sobre el derecho a la propia imagen frente a una expresión comercial y no sobre una causa de acción de difamación o libelo que precise la adjudicación de la falsedad del anuncio publicado. A diferencia de la difamación, la causa de acción por violar el derecho a la propia imagen no está condicionada a la naturaleza falsa de la expresión imputada. Como expresamos en Pérez Rosado v. El Vocero, *supra*, la verdad no es defensa en acciones de responsabilidad civil de esta índole. Por tanto, es impertinente la conclusión del tribunal apelativo en cuanto a que la expresión comercial de Quizno´s no puede ser razonablemente interpretada para evocar hechos reales.

De la misma manera, el foro apelativo confunde las doctrinas relacionadas a la parodia y a la sátira política. En el contexto del libelo, hemos señalado que "[e]l humor, sea en forma de sátira, parodia, chistes, etc., rinde una función dual al entretener y servir de crítica social simultáneamente. Como tal, amerita una protección especial en nuestra sociedad." Garib Bazain v. Clavell, *supra*, pág. 488.

_____

Procedure, Third Edition, West Group, St. Paul, 2007, Sec. 16.36, pág. 502-503.

Aunque surge del expediente que las fotografías del señor Vigoreaux Lorenzana y del señor Pesquera Morales se publicaron en un contexto humorístico, la función principal de la publicación del anuncio no era entretener ni servir de crítica social.[17] El objetivo del anuncio de Quizno´s era estrictamente comercial, pues sólo intentaba promover la venta de su nuevo emparedado. De hecho, el propósito comercial de la publicación se desprende del propio anuncio, el cual ofrecía un descuento de dos dólares ($2) para la compra del sándwich a todo aquel que llevara el anuncio a una sucursal de Quizno's. Como ya señalamos, la expresión comercial está sujeta a una protección constitucional menos rigurosa que otras formas de expresión, como lo eran las expresiones políticas que se encontraban en tensión con el derecho a la propia imagen en los casos de Bonilla, *supra,* y Colón, *supra*.[18]

---

[17] Cf. Hustler Magazine v. Falwell, 485 U.S. 46, 50 (1988). En este caso, el Tribunal Supremo Federal denegó una demanda por libelo presentada por Jerry Falwell contra Hustler Magazine, por haber publicado una parodia de un anuncio del licor Campari con una caricatura que representaba al ministro describiendo su "primera experiencia" con el licor como un encuentro incestuoso con su madre en una letrina. La madre del ministro aparecía como una alcohólica promiscua y Falwell como un alcohólico hipócrita. El tribunal expresó que, por naturaleza, las parodias y las caricaturas pueden ser patentemente ofensivas y frecuentemente van dirigidas a herir los sentimientos del sujeto afectado. A pesar de esto, el tribunal reconoció que ambas formas literarias son un elemento muy importante y enriquecedor de la discusión pública y política. A diferencia del caso de autos, la parodia publicada tenía la función inherente de ser una crítica social y no tenía el propósito de promover una transacción comercial. En Hustler, se trataba de una parodia de un anuncio, no de una expresión comercial como tal.

[18] Véase, a modo ilustrativo, White v. Samsung Electronics America, 971 F. 2d 1395 (9no Cir. 1992). En este caso, Vanna

Más aún, cabe destacar que los foros recurridos utilizaron indistintamente las figuras de la sátira y la parodia, confundiendo e ignorando las diferencias de la casuística en cuanto a estas defensas desarrolladas por la doctrina y la jurisprudencia en casos de libelo, libertad de expresión y derechos de autor. Primeramente, la vigésima segunda edición del el Diccionario de la Real Academia Española (2001) define la parodia meramente como una "imitación burlesca". **Claramente, la fotografía del señor Vigoreaux Lorenzana no es una imitación burlesca de otro anuncio, expresión o imagen, por lo que el anuncio, según esta definición, no constituye una parodia.** De otra parte, en el contexto de propiedad intelectual, el Tribunal Supremo Federal ha esbozado que una parodia es aquella expresión que utiliza algunos elementos de la composición original para crear una obra nueva que, por lo menos en parte, comente o se burle directamente de la obra original. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 580 (1994).[19] De acuerdo a esta definición, la fotografía publicada por Quizno´s tampoco es una parodia, pues no hay ninguna alteración en la imagen del señor Vigoreaux Lorenzana y no se observa valor

_____

White demandó a Samsung Electronics por violación a su derecho a la publicidad, a base de que este último publicó un anuncio para promover la venta de un VCR utilizando un robot con peluca, vestido y joyas, que jugaba a la ruleta y que gozaba de un gran parecido con la demandante. El noveno circuito determinó que Samsung se había apropiado indebidamente de la identidad de Vanna White y que la parodia no era relevante ante el contenido principal de la expresión comercial, a saber, promover la compraventa del producto anunciado.

transformativo alguno en la publicación de la misma. El mero acto de insertar unas palabras burlescas sobre la fotografía no es suficiente para crear una obra nueva bajo la doctrina de parodia de propiedad intelectual.

Por otro lado, el referido diccionario define la sátira como una "[c]omposición poética u otro escrito cuyo objeto es censurar acremente o poner en ridículo a alguien o algo". Cónsono con ello, el Tribunal Supremo Federal ha expresado que la sátira utiliza la obra original sin alteración o transformación significativa para criticar otro elemento social, no relacionado necesariamente con la obra original misma, por lo que se requiere mayor justificación para el mero acto de apropiación. Por tanto, la sátira tiene una protección constitucional de menor jerarquía que la parodia, especialmente cuando se utiliza para propósitos lucrativos y comerciales. Campbell v. Acuff-Rose Music, Inc., *supra*, pág. 581.

Es evidente que la fotografía publicada del señor Vigoreaux Lorenzana es una exposición literal de su imagen que no tiene valor transformativo alguno que la convierta en una parodia constitucionalmente protegida para propósitos de la doctrina y la jurisprudencia mencionada.[20] Como máximo, se

---

[19] Véase además, R. Posner, When is parody fair use? 21 J. Leg. Stud. 67 (1992).

[20] Cf. Cardtoons L.C. v. Major League Baseball Assoc., 3 F. 3d. 959 (10mo Cir., 1996). En ese caso, las caricaturas de los beisbolistas eran claramente una parodia, con un evidente valor transformativo y artístico. Pese a la naturaleza comercial de las tarjetas, y a diferencia del caso de autos, el propio producto mercadeado por Cardtoons era una parodia, por lo que no se trataba realmente de una expresión

podría considerar que ésta es una sátira con una protección constitucional muy limitada, dado el propósito comercial y mercantilista de la publicación del anuncio. El valor económico del anuncio publicado por Quizno´s, en el contexto del mercadeo de bienes comerciales, se deriva principalmente de la fama y notoriedad del señor Vigoreaux Lorenzana y del señor Pesquera Morales. Al ser candidatos derrotados, tampoco se puede aducir que éstos derivaron algún beneficio electoral por la publicación del anuncio. Además, no existe un interés legítimo en que los recurridos obtengan de gratis algún aspecto del peticionario que tiene valor comercial en el mercado y que, de ordinario, tendrían que pagar y obtener su consentimiento para su utilización. Kalven, Privacy in Tort Law Were Warren and Brandeis Wrong?, 31 Law & Contemp. Prob. 326, 331 (1966).

Por último, es menester aclarar que la condición de figura pública no priva por completo al individuo de su expectativa a la intimidad, como parece sugerir el tribunal apelativo. Este Tribunal ha señalado que catalogar a un demandante como "figura pública" significa "que para prevalecer en un pleito de difamación se le someterá a un criterio más riguroso de prueba, que su derecho a la intimidad pesa menos que el derecho de otros a la libre expresión, a menos que demuestre la existencia en éstos de malicia real". Garib Bazain v. Clavell, *supra*, pág. 483;

_____

comercial. Véase además, a modo ilustrativo, ETW Corp. v. Jireh Publ´g, Inc. 332 F.3d 915, 918 (6to Cir. 2003); Hoffman v. Capital Cities/ABC, Inc. 255 F3d. 1180 (9no Cir. 2001);

Clavell v. El Vocero de P.R., 115 D.P.R. 685, 692-693 (1984). En ningún momento hemos expresado que la figura pública pierde su intimidad por completo, ni mucho menos que su personalidad es de dominio público para propósitos comerciales.[21]

Además, en ocasiones anteriores hemos expresado que ante un reclamo de violación a este derecho constitucional, "[l]a cuestión central es si la persona tiene un derecho razonable a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete". Cotto v. Tiendas Pitusa, Inc., *supra*, pág. 659; citando a E.L.A. v. P.R. Tel. Co., *supra*, pág. 402. Es decir, lo que constituye un ataque abusivo o una intromisión a la intimidad dependerá de las circunstancias particulares en que se manifiesta la acción estatal o personal, y la naturaleza del

---

Comedy III Productions, Inc. v. Gary Saderup, Inc., 25 Cal. 4th 387, 21 P.3d 797, 106 Cal. Rptr. 2d 126 (2001).

[21] Véase, a modo comparativo, Von Hannover v. Alemania, 40 T.E.D.H. 1 (24 de junio de 2004). En ese caso, la princesa Carolina de Mónaco acudió en alzada al Tribunal Europeo de Derechos Humanos para impugnar una sentencia del Tribunal Constitucional alemán que denegó la expedición de un *injunction* para paralizar la publicación de unas fotografías suyas –tomadas en lugares públicos y semipúblicos– en unas revistas sensacionalistas alemanas, por ésta ser una figura pública (personalidad absoluta de la historia contemporánea). El Tribunal Europeo de Derechos Humanos dictó sentencia en contra de Alemania por no aplicar adecuadamente el delicado balance de intereses entre el derecho a la intimidad de una figura pública y la libertad de expresión de varias revistas sensacionalistas. En síntesis, concluyó que el derecho a la intimidad garantizado por el Artículo 8 del Convenio Europeo de Derechos Humanos cobija a las figuras públicas y prevalece sobre los intereses de las mencionadas revistas, a la luz de que "el elemento determinante, a la hora de establecer un equilibrio entre la protección de la vida privada y la libertad de expresión, debe residir en la contribución que las fotografías y los artículos publicados hacen al debate de interés general". *Id.* 76.

interés privado que se quiere proteger. En otras palabras, el criterio rector para determinar si existe o no la referida protección es si quien la reclama tiene una expectativa legítima a la intimidad bajo las circunstancias particulares y concretas del caso. Cotto v. Tiendas Pitusa, Inc., *supra*, pág. 660.

De conformidad con ello, entendemos que el tribunal apelativo erró al señalar que al trasladarse del mundo del espectáculo a la esfera política, el señor Vigoreaux Lorenzana perdió todo control sobre su intimidad y su imagen comercial. Es cierto que las figuras políticas están sujetas a un escrutinio riguroso sobre sus funciones y capacidades, e incluso sobre su personalidad y carácter. Aunque la expectativa de intimidad del señor Vigoreaux Lorenzana era limitada por su condición de legislador y figura política al momento de los hechos, todavía le amparaba su derecho a la propia imagen.[22] Por tanto, esta realidad no inmuniza a las

---

[22] Véase, a modo persuasivo, J. Thomas MacCarthy, The Rights of Publicity and Privacy § 4:23, 2d ed, West Thomson, 2007:

> However, all this is not to say that a political figure has less right of publicity when another makes unpermitted use of his or her identity in a commercial, nonpolitical context. For example, a Justice of the United States Supreme Court **should have the same scope of rights and remedies as anyone else against the unpermitted use of identity to draw attention to an ordinary commercial advertisement**. Thus, a Supreme Court Justice should have the right to an injunction and damages if the Ajax Coffee Co. runs a magazine advertisement without permission featuring a photo of the Justice and reading: "Justice Zelda Zak judges hard cases every day, but our coffee tasters have to make just as difficult distinctions in selecting only the finest coffee beans for Ajax Coffee." The fact that

entidades comerciales de responder civilmente por utilizar sin autorización la imagen e identidad de un sujeto para fines estrictamente lucrativos, sin que medie ninguna expresión artística o transformativa, o alguna de las causas de justificación anteriormente mencionadas.

Por todo lo anterior, concluimos que el uso no autorizado de la identidad de una persona para mercadear un producto o proponer una transacción comercial no es permisible y da lugar a una causa de acción por violación al derecho a la propia imagen, valor tutelado por el derecho a la intimidad. Dado que el señor Vigoreaux Lorenzana es una figura pública, es evidente que su conocida identidad se utilizó para mercadear el emparedado y promover un mayor volumen de ventas a costa de su propia imagen. Dicha imagen fue utilizada para propósitos de publicidad, sin que mediaran los elementos humorísticos y derivativos suficientes que la transformaran en una expresión protegida por el derecho a la libertad de expresión. Un comercio tiene el derecho a diseminar información sobre sus productos pero incurrirá en responsabilidad civil extracontractual si utiliza la imagen de una persona sin su consentimiento o sin que medie alguna de las mencionadas causas de justificación.[23]

_____

politicians, and especially former politicians, have appeared in commercial advertising to pitch products leads the public to not be surprised to see a politician's name or picture used in an advertisement.

[23] A su vez, la causa de acción reconocida en el presente caso no se basa en la probabilidad de confusión por un endoso comercial bajo una falsa luz, sino en el derecho moral y patrimonial a la propia imagen del peticionario. Sin embargo,

En el caso ante nos, la expresión comercial cede ante el derecho a lo privado. Al no constituir una parodia o expresión constitucionalmente protegida de mayor jerarquía que el derecho a la intimidad, concluimos que la publicación no autorizada de la fotografía de referencia para propósitos comerciales configuró una violación al derecho a la propia imagen del peticionario. Nuestra jurisprudencia ha reconocido que el concepto de culpa del Art. 1802, *supra*, es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o daño. Colón v. Romero Barceló, *supra*, pág. 579; Gierbolini v. Employers Fire Ins. Co. 104 D.P.R. 853 (1976). Es por ello que además de constituir una infracción al derecho subjetivo de la personalidad del señor Vigoreaux Lorenzana, concluimos que el acto en controversia también constituye una violación de naturaleza patrimonial.

## IV.

Por los fundamentos que anteceden, resolvemos que el peticionario tiene derecho a participar económicamente en la comercialización de su propia imagen, su nombre o su parecido, conforme al valor de tasación de tal imagen en el mercado de publicidad al momento de los hechos, pues le ampara un derecho patrimonial a la propia imagen. A su vez, tiene derecho a la concesión de daños morales por haber sufrido una violación del derecho a la intimidad, en la vertiente subjetiva de su derecho a la propia imagen. No

es razonable inferir que el anuncio de referencia puede inducir a los consumidores a asociar equivocadamente al

obstante, dada la naturaleza novel de la controversia y la expectativa de intimidad limitada del señor Vigoreaux Lorenzana por ser una figura política al momento de la publicación del anuncio, resolvemos que en el caso particular ante nos los daños morales son accesorios y marginales, por lo cual no deben ser mayores a los daños económicos que en su momento determine el tribunal de instancia.

Por consiguiente, revocamos la Sentencia emitida por el Tribunal de Apelaciones y, en consecuencia, devolvemos el caso al Tribunal de Primera Instancia para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

Federico Hernández Denton
Juez Presidente

_____
producto con el peticionario.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Roberto Vigoreaux Lorenzana
y Mary Ann Cortés Camacho,
etc.

   Demandantes-Apelantes

      v.                AC-2007-21   Certiorari

Quizno's Sub, Inc.; Aprendo
Strada, Inc. y Otros

   Demandados-Apelados

SENTENCIA

San Juan, Puerto Rico, a 29 de febrero de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente Sentencia, se revoca la Sentencia emitida por el Tribunal de Apelaciones y, en consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.

                          Aida I. Oquendo Graulau
                      Secretaria del Tribunal Supremo