Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EDMUNDO RAMÍREZ SANTOS H/N/C VENEZIAN CAFÉ<br><br>Apelantes<br><br>v.<br><br>SALÓN DE ESTRELLAS, INC., Y OTROS<br><br>Apelados | KLAN202300850 | *Apelación* Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Civil Núm.: SJ2020CV02777<br><br>Sobre:<br><br>Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de febrero de 2024.

Comparece el Sr. Edmundo Ramírez Santos (en adelante, Sr. Ramírez Santos o parte demandante-apelante), mediante el presente recurso de *Apelación*, y nos solicita que revoquemos la *Sentencia* dictada el 19 de julio de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI).[1] Mediante dicha *Sentencia*, el TPI declaró No Ha Lugar la demanda sobre daños y perjuicios presentada por la parte demandante-apelante por entender que dicha parte falló en presentar prueba sobre el acto u omisión negligente para que se configurara una reclamación en daños y perjuicios contra la parte demandada- apelada.[2] En consecuencia, el TPI desestimó la demanda y le concedió costas a la parte demandada-apelada.

Por los fundamentos que expondremos, se confirma la *Sentencia* apelada.

---

[1] Apéndice VII de la *Apelación,* págs. 47-58.
[2] *Íd.*

Número Identificador

SEN2024_____

**I.**

El 13 de mayo de 2020, el Sr. Ramírez Santos y H/N/C Vezian Café presentaron una *Demanda* sobre daños y perjuicios contra Salón de las Estrellas, Inc., Universal Insurance Co., PDCM Associates SE, y otros.[3] En síntesis, la parte demandante-apelante solicitó una indemnización por los daños y perjuicios sufridos por causa de un fuego que se esparció desde el local de la parte demandada-apelada, Salón de las Estrellas, Inc., hasta el local de la parte demandante- apelante en la madrugada del 2 de noviembre de 2019.[4]

Luego de varios incidentes procesales, el 9 de noviembre de 2020, Salón de las Estrellas, Inc. y Universal Insurance Co. (en adelante, parte demandada-apelada) presentaron su *Contestación a Demanda*.[5] En síntesis, negaron la mayoría de las alegaciones hechas en su contra y levantaron múltiples defensas afirmativas.[6]

El 19 de mayo de 2021, se celebró la *Vista de Estado de los Procedimientos*[7], y el 6 de octubre de 2021, las partes presentaron conjuntamente el *Informe de Conferencia con Antelación al Juicio*.[8] En la parte VIII de dicho informe, la parte demandante-apelante desglosó la prueba testifical que pretendía presentar en el juicio a su fondo.[9] En específico, la parte demandante-apelante indicó que pretendía utilizar la prueba testifical siguiente:

> "1. Patricia McCloskey- Testificará como investigadora de Universal Insurance que atendió el caso del incendio de Salón de las Estrellas, Inc. / Mío Salón LLC el 2 de noviembre de 2018. Su testimonio consistirá de autenticar sus informes, documentos obtenidos que llevaron a la aseguradora compensar a los codemandados.
> 2. Omar Delgado Santos- funcionario de Bomberos de Puerto Rico que acudió a la escena del incendio [el] 2 de

---

[3] Apéndice CI de la *Apelación,* págs. 563-565.
[4] *Íd.*
[5] Apéndice LXXXV de la *Apelación,* págs. 512-518.
[6] *Íd.*
[7] Véase, Apéndice LXIII de la *Apelación,* págs. 468-469.
[8] Apéndice XXXIX de la *Apelación,* págs. 392- 409.
[9] *Íd.*

noviembre de 2018 en Norte Shopping Center y sobre sus hallazgos en el informe que preparó.
3. Agente C. Méndez, Policía de Puerto Riso- agente investigador que llegó a la escena del incendio y preparo informes de querella.
4. Javier Hernández Ocasio- Administrador y copropietario del local de los demandantes testificará sobre el conocimiento de los daños que causó el incendio y los costos de represión del local.
5. Sandro Romero Kelly- Presidente de las corporaciones Salón de las Estrellast Mío Salón testificará sobre su conocimiento del incidente; lo que presenció en su negocio esa noche; y la reclamación a Universal Insurance.
6. Representante de Universal Insurance- testificará sobre los expedientes de reclamación al seguro relacionados a este incidente."[10]

La parte demandada-apelada objetó esta lista de testigos alegando que la parte demandante-apelante pretendían presentar testigos que no fueron anunciados en el descubrimiento de prueba.[11]

El 12 de octubre de 2021, se celebró la *Vista de Conferencia con Antelación al Juicio*.[12] En lo pertinente, durante la vista se discutió el informe presentado por las partes y, ante la existencia de controversia relacionada a la prueba testifical, se ordenó a que la parte demandante-apelante presentara un escrito detallando los testimonios de los testigos que pretendía presentar en el juicio.[13]

El 23 de diciembre de 2021, la parte demandante-apelante presentó una *Moción en Cumplimiento de Orden de Reunión para Confeccionar el Informe,* en la cual expuso detalladamente un resumen del testimonio de cada uno de sus testigos.[14]

El 26 de junio de 2023, la parte demandante-apelante presentó una *Moción en Solicitud de Citaciones a Testigos*, en la que solicitó que se expidieran citaciones para la comparecencia de Omar Delgado Santos y Patricia McCloskey.[15]

---

[10] *Íd.*
[11] *Íd.*
[12] Apéndice XXXVIII de la *Apelación,* págs. 387-391.
[13] *Íd.*
[14] *Íd.*
[15] Apéndice XXVII de la *Apelación,* pág. 353.

El TPI accedió a su solicitud y, el 27 de junio de 2023, se expidieron las correspondientes órdenes de citación.[16] Finalmente, el 28 de junio de 2023, la parte demandante-apelante presentó una *Moción Acreditando Citación de Testigos.*[17]

El 30 de junio de 2023, la parte demandada-apelada presentó una *Moción Sometiendo Exhibits-Prueba Conjunta y El Exhibit 1 de la Parte Demandante, así Como Informando la Falta de Citación Adecuada a la Testigo Anunciada por la Parte Demandante, Patricia McCloskey; Solicitud IN LIMINE.*[18] Respecto a la citación de Patricia McCloskey, la parte demandada-apelada alegó que el 28 de junio de 2023 la parte demandante-apelante entregó en Universal Insurance Co. la citación dirigida a Patricia McCloskey.[19] Sin embarho, sostuvo que que Patricia McCloskey nunca ha sido empleada de Universal Insurance Co. y que la parte demandada-apelada no tenía forma de hacerle llegar dicha citación, por lo que no debió haber llegado dicha citación a las oficinas de Universal Insurance Co.[20]

Así las cosas, el 5 y 6 de julio de 2023, se celebró el *Juicio en su Fondo.* En el primer día, la representación legal de la parte demandante-apelante planteó, en síntesis, que recibió una moción por parte de la parte demandada-apelada alegando que se había diligenciado la citación de la testigo Patricia McCloskey a través de Universal Insurance Co., a pesar de que esta no era empleada de dicha compañía.[21] Dicho diligenciamiento se dio en las oficinas de Universal Insurance Inc. debido a que la parte demandante-apelante "asumió" que Patricia McCloskey era empleada de dicha compañía por haber preparado el informe en un papel timbrado con el nombre

---

[16] Apéndice XVII de la *Apelación,* pág. 329.
[17] *Íd.*
[18] Apéndice XVI de la *Apelación,* págs.79- 327.
[19] *Íd.*
[20] *Íd.*
[21] Véase págs. 6-8 de Transcripción de la Prueba Oral del Juicio en su fondo (en adelante, TPO) del 5 de julio de 2023.

de Universal Insurance Co.[22] La parte demandada-apelada alegó que Patricia McCloskey era parte de McCloskey, Mulet & Bonnin, compañía a la cual Universal Insurance Co. solía contratar para hacer ajustes e investigaciones; y que en ningún momento la parte demandante-apelante le solicitó la información de dicha testigo que pretendía presentar.[23] Ante esta situación, la Jueza que presidió el juicio autorizó a la parte demandante-apelante a solicitar nuevamente la citación de dicha testigo para que compareciera el día 6 de julio de 2023. Al respecto la magistrada expresó lo siguiente:

> "Era obligación de la parte demandante y obligación suya como abogado descubrir pruebas sobre ese particular, no llegar al día del juicio, cuando estamos tratando de resolver este caso con un 'pretrial' del 2021, del 2022, y estamos en julio del 2023. Usted descansó en una información qué asumió, con todo respeto."[24]

Luego, la parte demandada-apelada realizó gestiones para encontrar información, realizó hasta una búsqueda en "internet" de Patricia McCloskey y la información obtenida fue comunicada a la parte demandante-apelante.[25] La parte demandante-apelante, durante el juicio informó que diligenció la citación de la testigo, sin embargo, la información brindada por la parte demandada-apelada respecto a la dirección resultó ser diferente.[26]

El 6 de julio de 2023, Patricia McCloskey no compareció a juicio, por lo que la parte demandante-apelante decidió someter su caso sin la comparecencia de dicha testigo.[27] A preguntas de la Jueza de si presentaría alguna otra prueba testifical, el representante de la parte demandante-apelante expresó "No vamos a presentar más ninguna prueba".[28]

---

[22] Véase TPO págs. 14-17.
[23] Véase TPO pág. 10.
[24] Véase TPO pág. 21.
[25] Véase TPO págs. 33-34.
[26] Véase TPO págs.137-138.
[27] Véase TPO del 6 de julio de 2023 pág. 5 en las líneas 5-9.
[28] Véase TPO del 6 de julio de 2023 pág. 6 en las líneas 6.

Finalmente, el 19 de julio de 2023, el TPI dictó *Sentencia* declarando No Ha Lugar la *Demanda* presentada por la parte demandante-apelante.[29] El foro primario, luego de evaluada la prueba presentada, concluyó lo siguiente:

> "[...]
> De la prueba admitida no surge duda alguna que el fuego se originó en el local de los demandados. La posición de la parte demandante es que procede ser indemnizado por los daños al interior del local arrendado. No obstante, como mencionamos antes, la causa de acción por daños extracontractuales requiere que se establezca por la parte demandante un acto u omisión negligente, que este fue la causa de los daños y los daños recibidos.
>
> En el presente caso **no se presentó prueba alguna sobre la causa del incendio que demuestre que la parte demandada incurrió en un acto u omisión negligente por el cual deba responder.** Aquí solo tenemos la ocurrencia del incendio que se originó en el local del Salón de Estrellas, por lo que **no se cumplen los requisitos para la causa de acción e irremediablemente procede la desestimación**.
> [...]"[30] (Énfasis suplido).

Inconforme, el 2 de agosto de 2023, la parte demandante-apelante presentó una *Moción de Reconsideración de Sentencia.*[31] En dicha moción, la parte demandante-apelante argumentó que, por haber sido privado de la presentación de tres (3) testigos, entiéndase: Patricia McCloskey, Romero Kelly, y un "representante de Universal Insurance", por la parte demandada-apelada, procedía que se dejara sin efecto la sentencia y se celebrara un nuevo juicio.[32]

Por su parte, el 17 de agosto de 2023, la parte demandada-apelada presentó su *Oposición a Reconsideración.*[33] En síntesis, la parte demandada-apelada arguyó, entre otras cosas, que no procedía la moción de reconsideración pues el argumento presentado por la parte demandante-apelante de que fue privado de testigos era incorrecto debido a que Patricia McCloskey no era

---

[29] Apéndice VII de la *Apelación,* págs.47- 58.
[30] *Íd.*
[31] Apéndice IV de la *Apelación,* págs.8-12.
[32] *Íd.*
[33] Apéndice II de la *Apelación,* págs.2-6.

empleada de Universal Insurance Co., Romero Kelly compareció a sala el 6 de julio de 2023, y el demandante-apelante decidió no utilizarlo, y el "representante de Universal Insurance" no fue especificado.[34] El 24 de agosto de 2023, el TPI declaró No ha Lugar la solicitud de reconsideración presentada por la parte demandante-apelante.[35]

Inconforme con la determinación del TPI, el 22 de septiembre de 2023, la parte demandante-apelante acudió ante nos mediante el presente recurso de *Apelación*. En su escrito señala la comisión de los siguientes errores:

> **Primer Error**: Erró el Honorable Tribunal de Primera Instancia al permitirle a la parte apelada a no seguir lo dispuesto en el Informe de Conferencia entre Abogados en cuanto a Testigos, despojando a los apelantes de su día en corte durante el juicio.

> **Segundo Error**: Erró el Honorable Tribunal de Primera Instancia al no tomar en cuenta los actos de mala fe de la representación legal de los apelados al ocultar testigos anunciados por la parte apelante, no permitiendo que desfilara su prueba en el juicio.

El 30 de enero de 2024 la parte demandada-apelada presentó su *Alegato en Oposición*.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## I.

### A. Citación de testigos

La citación en los procedimientos civiles se refiere al llamamiento de carácter obligatorio que realiza el secretario del tribunal o un abogado para que una persona comparezca a un procedimiento judicial en determinada fecha, hora y lugar. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, San Juan, Ed. LexisNexis de Puerto Rico, Inc., 2017, sec. 1901,

---

[34] *Íd.*
[35] Apéndice I de la *Apelación*, pág. 1.

pág. 237, citando a *Irizarry Seda v. Almacenes Rodríguez, Inc.,* 124 DPR 794 (1989).

La Regla 40.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 40.2, establece en qué instancias se pueden expedir citaciones. Entre ellas, dispone que se podrá expedir una citación "para requerir la comparecencia a juicio o vista a la sala del tribunal en que el juicio o la vista esté señalado." Regla 40.2 de Procedimiento Civil, *supra.*

El diligenciamiento de las citaciones está regulado por la Regla 40.3 de Procedimiento Civil, *supra.* En específico, establece que:

> "Una citación podrá ser diligenciada por el alguacil o alguacila, o por cualquier otra persona que no sea menor de dieciocho (18) años de edad que sepa leer y escribir y que no sea la parte, su abogado o abogada, sus parientes dentro del cuarto grado de consanguinidad o segundo de afinidad ni tenga interés en el pleito. El diligenciamiento de la citación a la persona a quien vaya dirigida se hará mediante la entrega de ésta a dicha persona o conforme a lo dispuesto en la Regla 4.4 para el diligenciamiento personal del emplazamiento. En los casos en que la citación requiera la comparecencia, ésta deberá estar acompañada con un cheque o giro por la cantidad de las dietas y del millaje según autorizado por ley. Cuando la citación se expida a solicitud del Estado Libre Asociado de Puerto Rico, sus agencias, municipios o dependencias, o de un oficial de éste, no será necesario ofrecer el pago de gastos de transportación ni dietas.
>
> **La citación será diligenciada con no menos de veinte (20) días de anticipación a la fecha de cumplimiento, con excepción de la citación que requiera la comparecencia a juicio o vista, la cual podrá ser diligenciada fuera de dicho término.**
> […]" (Énfasis suplido).

El dejar de obedecer a las órdenes del Tribunal respecto a la citación, sin mostrar justa causa, será considerado como desacato. Regla 40.10 de Procedimiento Civil, *supra.* Esto es, así pues, según explica el tratadista Hernández Colón, una citación debidamente diligenciada, similar al emplazamiento, les confiere a los tribunales jurisdicción sobre la persona citada. R. Hernández Colón, *Op. cit.,* sec. 1910, pág. 243.

### B. Descubrimiento de Prueba

El descubrimiento de prueba son medios de mecanismos que ofrecen las Reglas de Procedimiento Civil a las partes de un pleito para poder "descubrir, obtener o perpetuar" prueba necesaria para sostener sus alegaciones en el juicio. R. Hernández Colón, *Op. cit.*, sec. 2801, pág. 333. El Tribunal Supremo de Puerto Rico sobre dichos mecanismos ha expresado que:

> "[...]un amplio y adecuado descubrimiento de prueba antes del juicio **facilita la tramitación de los pleitos y evita los inconvenientes, las sorpresas** y las injusticias **que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio**." (Énfasis suplido) (citas omitidas). *E.L.A. v. Casta,* 162 DPR 1, 9 (2004),

La Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1, regula el alcance del descubrimiento de prueba, sobre el mismo expone:

> "El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:
>
> (a) En general. Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.
>
> (b) Documentos, objetos y otra prueba obtenida en preparación para el juicio. Sujeto a las disposiciones del inciso (c) de esta regla, una parte podrá hacer el descubrimiento de documentos y objetos que, antes del pleito o para el juicio, hayan sido preparados por o para otra parte, o por o para el o la representante de dicha parte, incluyendo a su abogado, abogada, consultor, consultora, fiador, fiadora, asegurador, aseguradora o agente. Estarán fuera del alcance del descubrimiento las impresiones mentales, conclusiones, opiniones o teorías legales sobre el caso, del abogado o de la abogada o de cualquier otro u otra representante de una parte. Una parte podrá requerir de la otra una lista de

las personas testigos que la parte solicitada intenta utilizar en el juicio, así como un resumen breve de lo que se propone declarar cada una. Igualmente, cualquier parte podrá requerir a cualquier otra que produzca copia de todas las declaraciones de testigos en poder de dicha parte. Asimismo, tanto las partes como las personas testigos pueden obtener copia de cualquier declaración prestada por ellas anteriormente. Para los propósitos de esta regla, una declaración prestada con anterioridad al juicio incluye cualquier declaración escrita, firmada o aprobada por la persona que la prestó, o cualquier tipo de grabación de una declaración o la transcripción de ésta.
[…]"

Además de regular el alcance de descubrimiento de prueba, la Regla 23.1de Procedimiento Civil, *supra*, establece la obligación de las partes de actualizar, corregir o enmendar la prueba que se ha descubierto y de notificarla. Al respecto, la Regla dispone específicamente lo siguiente:

"[…]
(e) Obligación continua de actualizar, corregir o enmendar la prueba que se ha descubierto y de notificarla. Una parte que haya respondido a una solicitud de descubrimiento tiene el deber continuo de actualizar, corregir o enmendar sus respuestas y notificar a la parte contraria toda información adicional que obtenga con posterioridad a dicha solicitud y que esté relacionada con dicho descubrimiento, siempre que el tribunal se lo ordene o que ocurra lo siguiente:

(1) Que la parte tenga conocimiento de que el material entregado está incorrecto o incompleto y que la información adicional o correctiva no se ha dado a conocer a la otra parte.
(2) Que la parte tenga conocimiento de que la información provista en la contestación del interrogatorio, el requerimiento de producción de documentos o el requerimiento de admisiones está incompleta o incorrecta y que la información adicional o correctiva no se ha dado a conocer.

El incumplimiento de la parte con su obligación de preservar prueba estará sujeto a sanciones económicas o de cualquier otra índole que el tribunal estime a su discreción, incluyendo el desacato, según lo dispone la Regla 34.3. El incumplimiento de la parte con su obligación de actualizar, corregir o enmendar conlleva la exclusión en el juicio de la prueba no actualizada si surge que, antes del juicio, la parte tenía conocimiento o debió tenerlo de la información adicional o correctiva y no la actualizó, corrigió ni enmendó. No obstante, de así interesarlo, la parte que solicitó dicho descubrimiento podrá hacer uso evidenciario de dicha prueba. Si el descubrimiento de la prueba surge

durante el juicio, se proveerá el remedio que corresponda.
[...]"

**C. Responsabilidad Civil por Daños**

Sabido es que en nuestro ordenamiento jurídico los actos y omisiones en que intervenga cualquier género de culpa o negligencia son fuentes de obligaciones que generan responsabilidad civil extracontractual. *Pérez et al. v. Lares Medical, et al.,* 207 DPR 965, 976 (2021). Al respecto, el Artículo 1042 del Código Civil, 31 LPRA sec. 2992, dispone que "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia."[36] Específicamente, respecto a las obligaciones que se derivan de actos culposos o negligentes son de particular aplicación los Artículos 1802 y subsiguientes del Código Civil. *Íd.*

El Artículo 1802 del Código Civil, 31 LPRA sec. 5141, preceptúa de forma general que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." Para reclamar bajo dicho Artículo el resarcimiento de daños y perjuicios sufridos, un demandante debe establecer: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción u omisión del demandado; y (3) el acto u omisión cual tiene que ser culposo o negligente. *Pérez et al. v. Lares Medical, et al.*, supra, pág. 976*; López v. Porrata Doria*, 169 DPR 135, 150 (2006).

Al examinar estos requisitos, el Tribunal Supremo ha señalado que el concepto de la culpa "es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de

---

[36] El "Código Civil de Puerto Rico", Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según emendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq.* No obstante, los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esta es la ley que aplica al caso.

una persona que produce un mal o daño*". López v. Porrata Doria*, supra, pág. 150, citando a *Colón v. Romero Barceló*, 112 DPR 573, 579 (1982). Es decir, incluye todo tipo de transgresión humana tanto en el orden legal como en el orden moral. *Íd.*, pág. 150; *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305, 313 (1970). Por lo tanto, "el actuar que da lugar a la responsabilidad civil ha de ser ilícito, contrario a la ley, orden público o buenas costumbres". (cita omitida) *Íd.*, pág. 150.

En *Gierbolini v. Employers Fire Ins. Co.*, 104 DPR 853, 860 (1976), el Tribunal Supremo explicó que se actúa de manera culposa cuando no se obra como una persona de diligencia normal u ordinaria, un buen padre de familia, conforme a las circunstancias del caso. Lo determinante es cómo se hubiese desenvuelto en una situación parecida una persona "de prudencia común u ordinaria". Íd. La culpa "es la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias". *Pérez et al. v. Lares Medical, et al.,* supra, págs. 976-977, citando a *López v. Porrata Doria*, supra, pág. 151, citando a *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997). Es también "la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso". *López v. Porrata Doria*, supra, pág. 151, citando a *Toro Aponte v. E.L.A.*, supra, pág. 473, citando a C. Rogel Vide, *La Responsabilidad Civil Extracontractual*, Ed. Civitas, 1976, pág. 90.

Respecto a la negligencia, para determinar si se ha ocurrido en responsabilidad civil extracontractual por omisión nuestro ordenamiento jurídico ha establecidos dos criterios a considerar, estos son:

> "(i) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño y (ii) si

de haberse realizado el acto omitido se hubiera evitado el daño."[37]

La existencia de un deber jurídico de actuar, cuando nos referimos a la negligencia, se refiere a que "[...] tiene que existir un deber de cuidado impuesto o reconocido por ley y que ocurra el quebrantamiento de ese deber". *Hernández Vélez v. Televicentro*, supra, pág. 813.

El deber de indemnizar "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". *López v. Porrata Doria*, supra, pág. 151, citando a *Estremera v. Inmobiliaria Rac.*, Inc., 109 DPR 852, 856 (1980). En nuestro ordenamiento jurídico, rige la doctrina de causalidad adecuada, la cual establece que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general." *Pérez et al. v. Lares Medical, et al.*, supra, págs. 976-977, citando a *López v. Porrata Doria*, supra, pág. 151, citando a *Soc. de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974). Este concepto de la causa postula, además, que la ocurrencia del daño que da base a la reclamación era previsible dentro del curso normal de los acontecimientos. *López v. Porrata Doria*, supra, pág. 152. Es decir, causa es la condición que ordinariamente produce el daño, según la experiencia general, y este nexo causal puede romperse ante la ocurrencia de un acto extraño. *Íd.; Elba A.B.M. v. U.P.R.*, 125 DPR 294, 310 (1990).

Por último, el concepto de daño se ha definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra".

---

[37] *Hernández Vélez v. Televicentro*, 168 DPR 803, 812 (2006) citando a *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94, 106 (1986).

(cita omitida) *López y otros v. Porrata Doria y otros*, supra, pág. 151. Sin daño o perjuicio no existe obligación de indemnizar. Íd.

El Tribunal Supremo de Puerto Rico ha expresado que en Puerto Rico ya no opera la doctrina de *res ipsa loquitur*, por lo que la parte reclamante en un caso de daños y perjuicios tiene el peso de probar la existencia de todos los elementos, es decir la existencia de la negligencia por la parte demandada, el daño y el nexo causal entre ambos. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711 (2000). Esto es así pues el nuestro más alto foro entendió que "[e]l mero hecho de que acontezca un accidente, no da lugar a inferencia alguna de negligencia". *Admor. F.S.E. v. Almacén Ramón Rosa*, supra, pág. 724 (citas omitidas).

### D. Apreciación de Prueba

Es doctrina legal reiterada que la apreciación de la prueba realizada por los foros de primera instancia debe ser objeto de gran deferencia por los tribunales apelativos. *McConell v. Palau,* 161 DPR 734, 750 (2004). Ello implica que un tribunal apelativo debe abstenerse de intervenir con las determinaciones de hechos y la adjudicación de credibilidad que realizó el foro primario, evitando descartarlas, modificarlas o sustituirlas por su criterio, aun cuando en su evaluación particular hubiera emitido un juicio distinto. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Argüello v. Argüello,* 155 DPR 62, 78 (2001). El fundamento de esta norma, en cuanto a la prueba testifical, yace en que es el foro primario quien de ordinario se encuentra en mejor posición para aquilatarla, ya que es quien ve y oye a los testigos, pudiendo apreciar sus gestos, titubeos, contradicciones, dudas, vacilaciones y, por consiguiente, formar en su conciencia la convicción en cuanto a si dicen o no la verdad. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 67-68 (2009). En contraste, los foros apelativos solo contamos con

récords mudos e inexpresivos. *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Esta norma, sin embargo, no es absoluta, pudiendo un apelante presentar prueba que demuestre que la apreciación realizada por el foro sentenciador no fue correcta o no está refrendada por la prueba presentada y admitida. *Serrano Muñoz v. Auxilio Mutuo, supra,* pág. 741.

Se ha reconocido en nuestro ordenamiento jurídico que, "ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia". *Santiago Ortiz v. Real Legacy et al.,* 206 DPR 194, 219 (2021). Al respecto, el Tribunal Supremo ha expresado que "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). De esta manera, "la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". *Santiago Ortiz v. Real Legacy et al.,* supra, pág. 219; *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013).

Incurre en pasión, prejuicio o parcialidad "aquel juzgador que actúe movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que someta prueba alguna". *Dávila Nieves v. Meléndez Marín,* supra, pág. 782. Por su parte, el error manifiesto ocurre cuando el foro apelativo queda

convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Íd.*, pág. 772. Véase, además, *Méndez v. Morales*, 142 DPR 26, 36 (1996).

En cuanto al concepto "error manifiesto", el Tribunal Supremo ha expresado que "se incurre en un error manifiesto cuando 'la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018), citando a *Pueblo v. Irizarry*, 156 DPR 780, 816, (2002).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 794 (2020); *Pueblo v. Toro Martínez*, supra, pág. 859. Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. *Gómez Márquez et al. v. El Oriental,* supra.

**III.**

En su recurso de *Apelación,* la parte demandante-apelante señala que erró el TPI al no seguir lo dispuesto en el *Informe de Conferencia entre Abogados* en cuanto a los testigos, despojándolos de su día en corte y al no tomar en cuenta los actos de mala fe de la representación legal de la parte demandada-apelada al ocultar testigos anunciados, evitando así que pudiera presentarlos como prueba en el juicio. De la evaluación de los argumentos de las partes, es forzoso concluir que no le asiste razón a la parte demandante-apelante. Veamos.

En específico, la parte demandante-apelante arguye que la parte demandada-apelada tenía conocimiento de que en el juicio se estarían utilizando los testigos siguientes: Patricia McCloskey, investigadora de la escena del fuego; un representante de la compañía aseguradora Universal Insurance, que no estaba identificado; y Sandro Romero Kelly, presidente del Salón de las Estrellas.

De conformidad con el expediente judicial y la trascripción de la prueba oral, el 5 y 6 de julio de 2023 se celebró el juicio a su fondo.[38] De la prueba presentada surge que la parte demandante-apelante diligenció el emplazamiento de Patricia McCloskey en las oficinas de Universal Insurance Co. el 28 de junio de 2023. Sin embargo, dicha testigo no era empleada de Universal Insurance Co. y no tenían control sobre su comparecencia, por lo que la testigo no compareció a juicio.[39] Sobre este particular, la parte demandante-apelante "asumió" que Patricia McCloskey era empleada de Universal Insurance Co. debido a que su informe fue preparado en papel timbrado de dicha compañía aseguradora, por tanto diligenció su citación en las oficinas de la aseguradora.[40] La parte demandante-apelante, como muy bien señaló el TPI, tenía la obligación de descubrir la prueba necesaria respecto a la identidad de sus testigos conforme a las Reglas de Procedimiento Civil y no esperar hasta el día del juicio para traer ante la consideración del foro primario dicho asunto.[41] La alegación de la parte demandante-apelante de que fue privado de su día en corte al no poder presentar prueba de alegados actos de mala fe de la parte demandada-apelada es improcedente en derecho. Por el contrario, era responsabilidad de la parte demándate-apelante utilizar los mecanismos de

---

[38] Véase TPO del 5 y 6 de julio de 2023.
[39] Véase TPO del 5 de julio de 2023 en las págs. 6-10. Apéndice XVI de la *Apelación,* págs. 79-327. Apéndice XVII de la *Apelación,* págs. 329-333.
[40] Véase TPO del 5 de julio de 2023 en la pág. 16.
[41] *Íd.* en las págs. 20-21.

descubrimiento de prueba que proveen las Reglas de Procedimiento Civil para descubrir la información necesaria y así evitar encontrarse con sorpresas e inconvenientes en los días de juicio.

Además, es importante puntualizar que la parte demandada-apelada informó que la testigo Patricia McCloskey no era empleada de Universal Insurance Co. sin habérselo requerido la parte demandante-apelante, por lo que dicha parte cumplió con su deber de informar y no actuó de mala fe, ni muchos menos realizó un acto de ocultar testigos. Véase *E.L.A. v. Casta*, supra, en la pág. 9.

Debemos también señalar que el TPI permitió que la parte demandante-apelante diligenciara nuevamente la citación de la testigo Patricia McCloskey durante el primer día de juicio, de manera que pudiera presentar su testimonio al día siguiente. Sin embargo, ante la incomparecencia de la testigo, la parte demandante-apelante decidió dar su caso por sometido sin presentar su testimonio.[42]

También enfatizamos que la parte demandante-apelante decidió no presentar el testimonio de Sandro Romero Kelly, a pesar de que lo había anunciado como testigo. Este testigo fue traído a juicio por la parte demandada-apelada el 6 de julio de 2023.[43] De igual manera, el testigo denominado "representante de Universal Insurance" nunca fue especificado. Al respecto, la parte demandante-apelante expresó en el juicio que: "[e]se último testigo, si se establece que es un récord de negocios y se puede estipular el expediente completo, no habría que traerlo, entiendo yo". [44]

Por lo tanto, en el presente caso, por la parte demandante-apelante no haber descubierto prueba respecto a la testigo que pretendía presentar en juicio, renunciar a otro testigo que fue traído a juicio, y no especificar quién era el testigo denominado

---

[42] Véase TPO del 6 de julio de 2023 en las pág. 5, líneas 4-9.
[43] *Íd.* en la págs. 6-7, líneas 20-25.
[44] Véase TPO del 5 de julio de 2023 en las pág. 8, líneas 1-4.

"representante de Universal Insurance", concluimos que no proceden los errores señalados en su recurso, pues fueron sus actuaciones las que le impidieron presentar su prueba en el juicio. Porl lo tanto, determinamos que no incidió el foro primario en la apreciación de la prueba.

**IV.**

Por los fundamentos antes expuestos se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
